STATE of Wisconsin, Plaintiff-Respondent,

v.

Fernando BAEZA, Defendant-Appellant.

Court of Appeals

*No. 92-1439-CR. Oral argument December 8, 1992.—Decided January 27, 1993.*

(Also reported in 496 N.W.2d 233.)

On behalf of the defendant-appellant, the cause was submitted on the brief and oral argument of *Anthony O'Malley* of *Zacherl & Wehner, S.C.* of Fond du Lac.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Maureen McGlynn Flanagan,* assistant attor-

ney general. Oral argument by *Maureen McGlynn Flanagan.*

Before Brown, Anderson and Snyder, JJ.

ANDERSON, J. Fernando Baeza appeals a judgment of conviction and an order denying his subsequent motion to withdraw his guilty plea. Baeza argues that he is entitled to withdraw his plea of guilty because the court did not inform him of the possible deportation consequences as required by sec. 971.08, Stats. Because Baeza is conclusively presumed to be deportable under federal law by pleading guilty to a violation of sec. 948.02(1), Stats., first-degree sexual assault of a child, and thus likely to be deported under sec. 971.08(2), we reverse the judgment and the trial court's order denying Baeza's motion.

Baeza was charged with two counts of first-degree sexual assault of a child in violation of sec. 948.02(1), Stats. The criminal complaint and testimony at the preliminary hearing indicated that while Baeza was intoxicated, he fondled a twelve-year-old girl (count one) and his eleven-year-old daughter (count two).

As a result of a plea bargain, Baeza pled guilty to one count and the other count was dismissed. At the time that the trial court accepted Baeza's plea, the court did not advise him that his immigration status could be affected, as required by sec. 971.08(1)(c), Stats.[1] Baeza

---

[1] Section 971.08, Stats., provides in part:

**Pleas of guilty and no contest; withdrawal thereof. (1)** Before the court accepts a plea of guilty or no contest, it shall do all of the following:

(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.

121

was later sentenced by the court to five years imprisonment.

Approximately one year after sentencing, Baeza filed a postconviction motion to withdraw his guilty plea. Although Baeza asked the trial court to withdraw his guilty plea based on four alternative grounds, this appeal relates only to the trial court's failure to advise him of the potential immigration consequences as required by sec. 971.08(1)(c), Stats.

At the postconviction hearing, Baeza testified that he has been a resident alien since he and his family immigrated to the United States from Chile in 1969, when he was thirteen. Both Baeza and his trial counsel testified that they did not discuss possible adverse immigration consequences of the guilty plea prior to the plea hearing. Baeza also stated at the postconviction hearing that officials from the United States Immigration and Naturalization Service (INS) had requested a "deportation hold" after his imprisonment, and that Agent Roland Swan informed him that his immigration status was being investigated and that he was "eligible for deportation." No documents from the INS and no other

(b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.

(c) Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."

(2) If a court fails to advise a defendant as required by sub. (1) (c) and a defendant later shows that the plea is likely to result in the defendant's deportation, exclusion from admission to this country or denial of naturalization, the court on the defendant's motion shall vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea. This subsection does not limit the ability to withdraw a plea of guilty or no contest on any other grounds.

testimony were presented by Baeza in support of his postconviction motion. The trial court denied Baeza's request for postconviction relief. The court held that although Baeza was not advised of the immigration consequences as required by sec. 971.08(1)(c), Stats., Baeza had failed to show that the plea was likely to result in his deportation as required by sec. 971.08(2).

Whether Baeza is entitled to withdraw his guilty plea pursuant to sec. 971.08, Stats., involves the interpretation of that statute and its application to the facts which were presented to the court. This presents a question of law which we decide without deference to the trial court's decision. *Wilson v. Waukesha County,* 157 Wis. 2d 790, 794, 460 N.W.2d 830, 832 (Ct. App. 1990).

Baeza argues that when a trial court fails to advise a defendant of possible adverse deportation consequences before the acceptance of a guilty plea as required by sec. 971.08(1)(c), Stats., the aggrieved defendant has two avenues available to withdraw the plea. The first is pursuant to *State v. Bangert,* 131 Wis. 2d 246, 389 N.W.2d 12 (1986). Baeza argues that *Bangert* provides that when a defendant shows a *prima facie* violation of any paragraph of sec. 971.08(1), the burden then shifts to the state to show that the plea was knowingly and voluntarily made. If the state fails to make this showing, the defendant is allowed to withdraw the plea. Baeza contends that the second avenue for relief is through sec. 971.08(2), which provides that if the defendant is not properly advised under sec. 971.08(1)(c) and the defendant later "shows that the plea is *likely* to result in the defendant's deportation," sec. 971.08(2) (emphasis added), the judgment is vacated and the defendant is permitted to withdraw the plea.

123

Baeza's attempt to use *Bangert* as an avenue of relief for violations of sec. 971.08(1)(c), Stats., fails. Section 971.08(1)(c) and (2) were created by secs. 3 and 4, 1985 Wis. Act 252, and became effective on April 24, 1986. Prior to that time, sec. 971.08(1) consisted of only paragraphs (a) and (b). As they do in the present statute, paragraphs (a) and (b) provided that before the acceptance of guilty or no contest pleas, the court must determine that a plea is made voluntarily with an understanding of the nature of the charge and the potential punishment, and that the defendant in fact committed the crime charged. *See* sec. 971.08(1), Stats. (1983–84).

Although decided after the effective date of the 1985 revisions, the statutory procedures at issue in *Bangert* were those in effect on the date of the plea colloquy, May 25, 1983. *Bangert* provided a remedy for the violation of sec. 971.08(1), Stats., as it existed in 1983, *i.e.*, it provided a remedy for violations of sec. 971.08(1)(a) and (b) only. Baeza argues that although the facts of *Bangert* dealt with a violation of sec. 971.08(1)(a), the opinion used broader language to encompass violations of any other paragraph of sec. 971.08(1) as well:

> We thus hold that when a defendant shows a *prima facie* violation of sec. 971.08 or a failure of the court to meet other enumerated obligations, including the duty to inform him of his constitutional rights or a failure to ascertain his knowledge thereof, the state bears the burden of showing by clear and convincing evidence that the plea was knowingly and voluntarily made.

*Bangert,* 131 Wis. 2d at 275, 389 N.W.2d at 26–27 (citation omitted). This quoted portion of the opinion is a summary of a longer discussion by the court about the remedy for violations of sec. 971.08, Stats. (1983–84),

and other mandatory procedures which the court required to be undertaken. Baeza concludes that this broad language makes the *Bangert* analysis appropriate for use in this case. We disagree. Because the opinion's reference to "sec. 971.08" was a reference to sec. 971.08, Stats. (1983–84), the remedy established by *Bangert* does not apply to violations of sec. 971.08(1)(c). This is especially true because *Bangert* was concerned with providing a remedy for a violation of a statute where no statutory remedy existed. Because the remedy for a violation of sec. 971.08(1)(c) is found in sec. 971.08(2), there is no need to resort to this common law remedy.

Baeza also argues that the addition of sec. 971.08(1)(c) and (2), Stats., is a legislative mandate to make deportation consequences a *direct* consequence of a guilty plea, instead of a *collateral* consequence. As a direct consequence, Baeza asserts that the lack of knowledge of the deportation consequences affects whether the plea was voluntary and with an understanding of the charge and potential punishment. *See* sec. 971.08(1)(a). Baeza contends that then *Bangert* applies through sec. 971.08(1)(a).

In *State v. Santos*, 136 Wis. 2d 528, 531, 401 N.W.2d 856, 858 (Ct. App. 1987), we stated that deportation was a collateral consequence of the plea. We also noted that defendants need not be informed of the collateral consequences of a plea, absent a statutory mandate. *See id.* at 531 & n.3, 401 N.W.2d at 858. The statutory mandate of sec. 971.08(1)(c), Stats., cannot transform this collateral consequence into a direct consequence of the plea. It can only recognize that this collateral consequence is of such importance that the defendant should be informed of its possibility. Because the possibility of deportation remains a collateral conse-

quence, sec. 971.08(1)(a) is not implicated and the *Bangert* remedy is not applicable.

Another contention of Baeza is that sec. 971.08(1)(c), Stats., is one of those "other enumerated obligations," *Bangert,* 131 Wis. 2d at 274–75, 389 N.W.2d at 27, for which the court intended to provide a remedy. Again, an examination of the court's discussion reveals that the "enumerated obligations" which the court was referring to were those "court-mandated duties" to be fulfilled at the plea hearing. *Id.* at 274, 389 N.W.2d at 26. Section 971.08(1)(c) is not a court-mandated duty but a statutory one; therefore, *Bangert* does not apply to violations of sec. 971.08(1)(c).

At oral argument, Baeza's counsel stated that "subsection (2) [of sec. 971.08, Stats.] also says, in the very last sentence, that [the subsection (2) remedy for the violation of sec. 971.08(1)(c)] is not going to affect other rights that the person has to seek reopening of his plea." Counsel argued that this sentence specifically acknowledged that there may be other remedies available for sec. 971.08(1)(c) violations, such as the method available through *Bangert,* and that the legislature did not intend to abrogate those remedies, but to supplement them.

Baeza and his counsel misread the last sentence of sec. 971.08(2), Stats. That sentence provides that "[t]his subsection does not limit the ability to withdraw a plea of guilty or no contest on *any other grounds." Id.* (emphasis added). The statute's reference to "grounds" means other reasons the defendant would have to withdraw the plea, *e.g.,* a violation of sec. 971.08(1)(a) or a violation of a constitutional right. We hold that this sentence was necessary to preclude the argument that because a statutory remedy of plea withdrawal was spe-

126

cifically made available for violations of sec. 971.08(1)(c), the legislature intended that the plea withdrawal remedy was available only for violations of that paragraph and that other violations were intended to have a different remedy. The sentence simply provides the remedy for violations of sec. 971.08(1)(c) and does not intend to affect requests for withdrawal of a plea based on other statutory or constitutional violations.

Because we hold that the *Bangert* avenue for relief is an unavailable remedy for a violation of sec. 971.08(1)(c), Stats., we now turn to whether Baeza is entitled to relief under sec. 971.08(2). The state argues that although sec. 971.08(1)(c) was violated by not advising Baeza of the possible deportation consequences of his guilty plea, Baeza is not entitled to relief because he made no showing that the plea is "likely to result" in his deportation. *See* sec. 971.08(2). The state contends that, at best, Baeza's testimony suggested that deportation is a "remote possibility" which does not meet the standard of sec. 971.08(2).

Baeza asserts that upon a conviction of first-degree sexual assault of a child under sec. 948.02(1), Stats., a person is "conclusively presumed deportable" under federal law. He argues that this presumption is sufficient to show that his deportation is "likely" under sec. 971.08(2), Stats. We agree with Baeza.

Classes of aliens who are deportable from the United States are set forth in 8 U.S.C. § 1251(a). One of those classes is aliens convicted of designated criminal offenses, which include an "aggravated felony" committed any time after entry. *See* 8 U.S.C. § 1251(a)(2)(A)(iii). Upon conviction of the "aggravated felony," the alien is conclusively presumed deportable. 8 U.S.C. § 1252a(c). Therefore, the first inquiry is

127

whether Baeza's conviction for first-degree sexual assault of a child, contrary to sec. 948.02(1), Stats., is an "aggravated felony" under federal law.

"Aggravated felony" is defined in 8 U.S.C. § 1101(a)(43).[2] Of the various offenses described therein, the only one which could apply to Baeza is a crime of violence. A "crime of violence" is defined as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16. The Seventh Circuit Court of Appeals looks at both the elements of the offense charged and the underlying conduct when considering whether an offense is a "crime of violence" under the Career Offender Guidelines.[3] *See United States v. Alvarez,* 914 F.2d 915, 918 (7th Cir. 1990), *cert. denied,* 111 S.Ct. 2057 (1991). Although it is unclear whether the Seventh Circuit would examine the underlying conduct in the context of

---

[2] 8 U.S.C. § 1101(a)(43) provides:

The term "aggravated felony" means murder, any illicit trafficking in any controlled substance . . . including any drug trafficking crime . . . or any illicit trafficking in any firearms or destructive devices . . . any offense described in section 1956 of Title 18 (relating to laundering of monetary instruments), *or any crime of violence (as defined in section 16 of Title 18 . . .) for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least 5 years . . ..* Such term applies to offenses described in the previous sentence whether in violation of Federal or State law . . .. [Emphasis added.]

[3] The Career Offender Guideline is sec. 4B1.1 of the United States Sentencing Guidelines.

a deportation proceeding,[4] we need not address that issue because there is sufficient authority that the elements of the offense under sec. 948.02(1), Stats., charged against Baeza constitute a "crime of violence."

The Eighth Circuit Court of Appeals has held that the commission of lascivious acts with a child by fondling or touching the pubes or genitals of the child, a violation of IOWA CODE § 709.8.1 (Supp. 1991),[5] qualifies as a "crime of violence" under 18 U.S.C. § 16(b). *United States v. Rodriguez*, 979 F.2d 138, 140 (8th Cir. 1992). The facts stipulated in *Rodriguez* were virtually identical to the acts alleged in the information to which Baeza pled guilty. *Rodriguez* held that judges would not be "saddled with the task of examining each individual offense committed to determine whether it actually involved substantial risk of physical force." *Id.* at 141. The court stated that

---

[4] In *United States v. Alvarez*, 914 F.2d 915, 918 (7th Cir. 1990), *cert. denied*, 111 S. Ct. 2057 (1991), the Seventh Circuit Court of Appeals relied upon the commentary to the United States Sentencing Guidelines when it decided to examine the underlying conduct as well as the elements of the offense charged. It is unclear whether this inquiry would be adopted by the Seventh Circuit outside the context of sentencing under the Career Offender Guideline. *See, e.g., United States v. Rodriguez*, 979 F.2d 138, 140–41 (8th Cir. 1992).

[5] IOWA CODE § 709.8 (Supp. 1991), lascivious acts with a child, is Iowa's equivalent of sec. 948.02(1), Stats. IOWA CODE § 709.8 provides in part:

> It is unlawful for any person eighteen years of age or older to perform any of the following acts with a child with or without the child's consent unless married to each other, for the purpose of arousing or satisfying the sexual desires of either of them:
> 1. Fondle or touch the pubes or genitals of a child.

[a]ll crimes which by their nature involve a substantial risk of physical force share the risk of harm. It matters not one whit whether the risk ultimately causes the actual harm. Our scrutiny ends upon a finding that the risk of violence is present. There is no question that the crime to which [the defendant] admitted, lascivious acts with children of the tender age of ten, is by its nature a crime of violence.

*Id.*

Because of the similarity between *Rodriguez* and the situation before us, we conclude that federal courts would consider Baeza convicted of a "crime of violence," as defined by 18 U.S.C. § 16(b). Therefore, he is conclusively presumed deportable. *See* 8 U.S.C. § 1101(a)(43); see also 8 U.S.C. § 1252a(c). This conclusive presumption, especially when coupled with Baeza's testimony that he was under a "deportation hold" and was being investigated by the INS, is sufficient to show that he is "likely" to be deported. Accordingly, he is entitled to withdraw his plea of guilty under sec. 971.08(2), Stats.

*By the Court.*—Judgment and order reversed.