STATE of Wisconsin, Plaintiff-Respondent,

v.

John W. JAMES, Defendant-Appellant.†

Court of Appeals

*Nos. 92–1144–CR, 92–1145–CR. Submitted on briefs February 3, 1993.—Decided April 8, 1993.*

(Also reported in 500 N.W.2d 345.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *T. Christopher Kelly* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Thomas J. Balistreri*, assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

EICH, C.J. We decide in this case that in accepting a negotiated plea for probation, the trial court should but is not required to advise the defendant

of the potential maximum term to which he or she would be subjected in the event probation is revoked.

John W. James pled no contest to two counts of bail jumping and one count of battery. The trial court, accepting the state's plea-bargained recommendation, withheld sentence and placed him on probation for five years. After his probation was revoked, James was returned to court and sentenced, as a repeater, to a total of nineteen years on the three convictions. He then moved to withdraw his plea, claiming it was involuntarily and unknowingly entered. He maintained that, although the court and his attorney advised him at the plea hearing that he faced a maximum sentence of twenty-five years on the three counts, the court never specifically informed him that if his probation were to be revoked he could be sentenced to a term of imprisonment greater than the five-year probationary term.

Because we conclude that the trial court was not required to so advise James prior to accepting his plea, we affirm the order.

The appeal involves two separate but related cases. In 1988, James was convicted of felony child abuse. After conviction but prior to sentencing, he violated the terms of his bond by having contact with the child and its mother, Jill D., and he was charged with bail jumping. He received an imposed-and-stayed two-year prison sentence on the child abuse charge and was placed on probation, with the condition that he serve three months in the county jail and, again, that he have no contact with Jill D. or the child. While serving the county jail sentence he was released for medical treatment but instead went to Jill D.'s home and assaulted her. For that, he was charged with battery and a second count of bail jumping.

233

James and the state reached a plea agreement in which he agreed to plead no contest to the three charges — two counts of bail jumping and one count of battery — in exchange for the state's agreement to recommend that the court withhold sentence and place him on probation for a total of five years.

Prior to the plea hearing, James and his attorney filled out a "plea questionnaire and waiver of rights" form which included James's acknowledgement that he understood he was facing maximum prison sentences totalling twenty-five years on the three charges. He acknowledged that he had gone over "each and every question on the form" with his attorney before he signed it.

At the plea hearing, the prosecutor explained to the court that, as a means of attempting to get James to "conform his conduct," the state was recommending probation, "which means . . . he could be revoked on probation . . . thereby facing 25 years that he's currently facing." The court, in its discussion of the plea with James, asked him whether he understood "that the maximum penalties which could be imposed for the crimes . . . set forth in the information total $30,000 in fines or . . . imprisonment for up to 25 years or both," to which James replied that he did.

After his probation was revoked for repeated contact with the child and the child's mother, James was returned to court for sentencing. The prosecutor began her remarks at the sentencing hearing by noting that James was facing "25 years in prison" on the three counts and, after discussing the circumstances of the offenses and James's prior convictions in some detail, she recommended that he be sentenced to maximum consecutive terms totalling twenty-five years. Neither

James nor his counsel questioned the state's ability to make such a recommendation.

After his counsel's argument, James addressed the court. He made no mention of the state's twenty-five year recommendation until the conclusion of his lengthy statement, when he said simply: "a total of 25 years, no, I don't think that's justice, and I would ask [that] you tru[ ]ly use your heart before you sentence me."

The trial court, after discussing the nature of the offenses, James's "very substantial" criminal record, his failures on probation and parole in the past, and his continuing refusal to take responsibility for his actions, imposed prison sentences on the three charges totalling nineteen years.

As indicated, James promptly moved to withdraw his plea, claiming it was not knowingly and voluntarily entered. He also contended that his plea was entered as a result of ineffective assistance of counsel, but he has not pursued that claim on appeal.

At the hearing on the plea-withdrawal motion, the attorney who had represented James at the plea hearing was asked whether he told James prior to entry of the plea that he could be sentenced up to the twenty-five year maximum on the charges should his probation be revoked. Counsel responded that he could not remember specifically, but stated that he ordinarily would offer such an explanation to his clients. Counsel then stated that he and James did discuss the "total maximum sentences that were facing him," and that that potential sentence was one of the reasons for entering into the plea agreement. Counsel recalled that it was his usual practice to go over the plea questionnaire with his clients point by point "carefully advis[ing] [them] about each item" — and that he spe-

cifically remembered discussing the maximum penalties for the offenses with James.

James testified at the hearing that his attorney never told him that there were any "consequences upon revocation of probation." According to James, his counsel simply said that "the Judge would go along with the plea agreement," and that he (James) believed that if his probation were ever revoked, he would only be sentenced to prison for whatever time remained in the five-year probationary term. He stated that if he had known that he was facing more time than that, if his probation were revoked, he would not have entered the plea in the first place.

When asked about the prosecutor's remark at the plea hearing that he would be facing a maximum sentence of twenty-five years should his probation be revoked, James responded that he did not hear the statement because he was talking to his attorney and filling out the plea questionnaire while the hearing was going on. He also stated that, while he responded in the affirmative to the court's question whether he understood he was facing a total of twenty-five years, he wasn't listening "[w]holeheartedly" to the judge's remarks.

The trial court indicated its disbelief of James's testimony that he did not hear the prosecutor's explanation of the sentencing effects of probation revocation and declined to permit him to withdraw his plea. In so ruling, the court also emphasized the fact that in his lengthy statement at the sentencing hearing, he never challenged — or even referred to — the state's right to seek a twenty-five year prison sentence.

Generally, a defendant wishing to withdraw a plea of guilty or no contest has the burden of showing by

clear and convincing evidence that withdrawal is necessary to correct a manifest injustice. *State v. Spears*, 147 Wis. 2d 429, 434, 433 N.W.2d 595, 598 (Ct. App. 1988). A "manifest injustice" occurs where a defendant makes a plea involuntarily or without knowledge of the consequences of the plea — or where the plea is "entered without knowledge of the charge or that the sentence actually imposed could be imposed." *Birts v. State*, 68 Wis. 2d 389, 393, 228 N.W.2d 351, 354 (1975) (quoting *State v. Reppin*, 35 Wis. 2d 377, 385 n.2, 151 N.W.2d 9, 14 (1967)).

When a defendant alleges that he or she did not know or understand the information which should have been provided at the plea hearing and shows that the trial court failed to follow the procedures necessary to properly accept a plea, he or she has made a *prima facie* case that the plea was not knowingly and voluntarily entered. *State v. Bangert*, 131 Wis. 2d 246, 274, 389 N.W.2d 12, 26 (1986). The burden then shifts to the state to show by clear and convincing evidence that the plea was entered knowingly and voluntarily despite the procedural defect. *Id.*

Whether a defendant has made a *prima facie* showing that his plea was entered involuntarily or unknowingly is a question of law, which we review *de novo*. *State v. Hansen*, 168 Wis. 2d 749, 755, 485 N.W.2d 74, 77 (Ct. App. 1992).

Section 971.08(1)(a), Stats., requires the judge taking the plea to "determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted." James argues that the trial court failed to follow the latter portion of the statute when it neglected to per-

sonally explain to him and ascertain that he understood he could face the maximum sentence on the charges if his probation were to be revoked.

Because a defendant waives important constitutional rights by entering a plea of guilty or no contest to a criminal charge, the law requires that the plea be entered knowingly and voluntarily — "with sufficient awareness of the relevant circumstances and likely consequences" that could follow. *Brady v. United States*, 397 U.S. 742, 748 (1970). It is equally well established, however, that in informing accused persons of their rights, courts are only required to notify them of the "direct consequences" of their pleas. *Brady*, 397 U.S. at 755; *Lewandowski v. State*, 140 Wis. 2d 405, 408, 411 N.W.2d 146, 148 (Ct. App. 1987). There is no requirement that a defendant entering a plea be informed of indirect or "collateral" consequences of conviction. *State v. Santos*, 136 Wis. 2d 528, 531, 401 N.W.2d 856, 858 (Ct. App. 1987). And "[t]he distinction between 'direct' and 'collateral' consequences of a plea . . . turns on whether the result represents a definite, immediate, and largely automatic effect on the range of the defendant's punishment." *Cuthrell v. Director, Patuxent Inst.*, 475 F.2d 1364, 1366 (4th Cir.), *cert. denied*, 414 U.S. 1005 (1973).

Applying these principles, we have held that a repeat drunk driving conviction which would subject the defendant to provisions of the "habitual traffic offender" law and an eventual five-year revocation of his driving license is only a collateral consequence of his plea to the charge. *State v. Madison*, 120 Wis. 2d 150, 159-61, 353 N.W.2d 835, 840-41 (Ct. App. 1984). Thus, the failure to inform the accused of that fact at the time of his plea did not invalidate the plea. *Id.* at

238

161, 353 N.W.2d at 841. We reached a similar conclusion in a case where the defendant claimed he was entitled to withdraw his guilty plea to a burglary charge because he was never advised that conviction might result in his deportation to Cuba. We rejected the argument, holding that deportation was but "a collateral consequence of a plea." *Santos*, 136 Wis. 2d at 531, 401 N.W.2d at 858.[1] *See also Garski v. State*, 75 Wis. 2d 62, 76, 248 N.W.2d 425, 433 (1977) (failure to inform defendant that a condition of probation might include restitution to the victim did not warrant allowing him to withdraw his plea).

Similarly, in *Cuthrell*, the court of appeals ruled that possible institutionalization for treatment upon conviction for assault was a collateral consequence of the defendant's plea to the charge. The court reasoned that because commitment did not "definitely or immediately or automatically result from [the] guilty plea," but would come only after separate administrative proceedings were convened, it was only a collateral, not a direct, consequence of the plea. 475 F.2d at 1366-67. *See also Hutchison v. United States,* 450 F.2d 930, 931 (10th Cir. 1971) (court need not inform defendant that conviction for escape results in loss of earned good time before accepting his plea to the charge).

While the precise issue has not been decided in Wisconsin, other courts have rejected arguments similar to those raised by James on this appeal. In *Weaver v. United States*, 454 F.2d 315 (7th Cir. 1971), the defendant pleaded guilty to uttering counterfeit securi-

---

[1] Section 971.08(1)(c), Stats., now requires trial courts to advise a defendant that if he or she is not a United States citizen, the conviction may result in deportation, exclusion from admission to the United States, or denial of naturalization under federal law.

ties. Sentence was withheld and he was placed on probation for five years. His probation eventually was revoked and he was sentenced to twelve years in prison — only slightly shy of the maximum penalty. Seeking to vacate the sentence, the defendant made the same argument James makes here: that when he pled to the charge he was not advised "that should he subsequently violate the terms of his probation he could upon revocation be resentenced to a period of imprisonment exceeding the period of probation that had been granted." *Id.* at 316-17. The court of appeals responded:

> We reject the claim . . . that Rule 11[2] requires a court to warn a defendant of the consequences of revocation of probation, prior to accepting his guilty plea. No authority is cited to support that claim. In our view none could be cited since it is inconceivable to us that at arraignment, district court judges must add to the plain requirements of Rule 11 the burden of anticipating probation in accepting guilty pleas and warning of the consequences of revocation. *Id.* at 317.[3]

---

[2] Rule 11 of the Federal Rules of Criminal Procedure sets forth the procedure for accepting pleas in federal court. It is the equivalent of sec. 971.08, Stats.

[3] The trial judge in *Weaver* did ascertain that the defendant understood that his probation could be revoked if he committed further law violations and that " 'the court is very strict and severe' for a violation of probation . . . ." 454 F.2d at 318. In this case, as we have noted, James was aware of the maximum penalty for the charges and the district attorney stated on the record at the plea hearing that that penalty could follow revocation of probation. And while, as we have also noted, James said he was otherwise occupied when the prosecutor made that remark, the trial court gave little or no credence to that statement. Thus, despite a slight difference in the factual setting, there is little to distinguish *Weaver* from the instant case.

The defendant in *State v. Ervin*, 575 A.2d 491, 497 (N.J. Super. Ct. App. Div. 1989), also argued "that he must be told at the time of plea of a consequence of his failure to satisfy the conditions of probation."[4] The New Jersey court rejected the argument, concluding that the possibility of a more severe sentence after revocation of probation was a " 'collateral consequence' of the defendant's failure to honor the conditions of probation imposed upon the original conviction." *Id.* And, said the court, "[that] consequence flows exclusively from defendant's failure to honor those conditions . . . ." *Id.*

In *People v. Crain*, 519 N.E.2d 1134 (Ill. Ct. App. 1988), the Illinois court refused to allow the defendant to withdraw his plea on grounds that he was not

[4] Ervin agreed to plead to three charges in exchange for the prosecutor's recommendation of the maximum ten-year sentence for the most serious charge and concurrent lesser sentences for the two other charges. He was advised at the plea hearing of the maximum penalty for each charge but was not advised about a potential period of parole ineligibility. He was placed on probation, with a warning from the court that should his probation be revoked, he would "go away to prison for as long . . . a time I can possibly sentence you." *Ervin*, 575 A.2d at 494.

Ervin's probation was revoked and he was sentenced to the maximum *consecutive* terms for each offense, resulting in sixteen and one-half years in prison, with nearly nine years of parole ineligibility. Because applicable law required the court to inform a pleading defendant of "any period of parole ineligibility that is *likely* to become part of his sentence," Ervin argued that he should be permitted to withdraw his plea because the postrevocation sentence exceeded the concurrent ten-year sentence he was promised at the time and also included a period of parole ineligibility for which he had not been warned. *Id.* at 497 (emphasis in original). As indicated, the court rejected his argument.

241

advised when he entered it of the possible consequences of probation revocation. The court stated:

> A sentencing court is not obligated to attempt to foresee and anticipate defendant's actions on probation which might constitute a subsequent violation of the law and advise him of the consequences of those actions. If the court could foresee the defendant committing a felony while on probation, the defendant should be imprisoned rather than admitted to probation in the first place. *Id.* at 1136.

Again, while the facts of *Crain* are slightly different in that the more severe sentence received by the defendant after revocation stemmed from the commission of a second crime,[5] we think the court's reasoning is equally applicable here.

Finally, in *Torrey v. Estelle*, 842 F.2d 234 (9th Cir. 1988), the defendant, who was nineteen when he committed the crime, pled guilty to first degree murder pursuant to a plea agreement that he would be committed to the California Youth Authority until he reached the age of twenty-five. After two years, however, the Youthful Offender Parole Board determined that he was not amenable to treatment and, pursuant to California law, he was returned to the committing court for

---

[5] When Crain was placed on probation for the first offense, he was only advised that the crime carried a maximum penalty of two to five years. His probation was revoked when he committed another offense and, after being convicted of the second crime, he was returned to court for resentencing on the first charge. Because of the intervening conviction, he was subject to the Illinois mandatory consecutive sentence law and was sentenced to two years consecutive to the three year term imposed for the second conviction. He sought to withdraw his plea on grounds that the judge taking the plea never advised him of the effect of the mandatory consecutive sentence law.

sentencing, where he received a term of twenty-five years to life in state prison. *Id.* at 234-35. The court of appeals rejected the defendant's argument that he should be permitted to withdraw his plea because the committing court never advised him of the possibility of his being found an inappropriate subject for Youth Authority treatment, thus exposing him to a twenty-five year prison sentence. Concluding that the ultimate prison sentence was a collateral consequence of the defendant's plea, the court stated:

> In determining the voluntariness of a plea and whether it has been made intelligently, the [trial] court cannot be required to foresee an accused's future conduct and to predict all possible alternative ramifications thereof. [Defendant's] failure to succeed under the original terms of his sentence was simply an indefinite possibility on which the trial judge had no duty to speculate. *Id.* at 236.

James does not dispute that he understood at the time he entered the plea that he was facing up to twenty-five years in prison. And, as we have noted, the trial court — the sole judge of the credibility of the witnesses appearing before it — gave no credence to James's testimony that he was otherwise occupied and did not hear the prosecutor specifically state at the plea hearing that should the jointly recommended five-year probationary term be revoked, he would then be "facing twenty-five years."

■

James was returned to court for sentencing for one reason only: knowing the conditions of his probation, he elected not to keep them. Thus, the "consequence" of his plea that he now argues he had a right to be informed of — resentencing upon revocation of proba-

tion — was one that was well within his control.[6] It was contingent upon his own behavior, and therefore was neither a definite, immediate, nor largely automatic consequence of his plea but only a collateral consequence of which the trial court was not bound to inform him. *Cuthrell*, 475 F.2d at 1366.[7]

We must emphasize, however, that we consider it by far the better practice to inform a defendant when accepting a plea that involves probation that he or she may face a sentence up to the maximum in the event

[6] We note, too, that revocation is not automatic even when a defendant is reported as violating a condition of probation. The matter goes to a judicially-reviewable administrative hearing in order to determine whether to revoke probation. Wis. Adm. Code secs. DOC 331.01-.16. Thus the possibility of revocation is controlled in the first instance by the defendant's own volitional acts, and in the second by the discretionary action of an administrative agency; and it has been recognized that "a defendant need not be advised of a possible effect of a plea that results from the discretionary decision of another state agency." *State v. Music*, 698 P.2d 1087, 1091 (Wash. Ct. App. 1985).

[7] In addition to the cases discussed above, our conclusion also finds support in the following cases: *Pelzer v. Vaughn*, No. 92-0091, 1992 U.S. Dist. LEXIS 8990, at *12 (E.D. Penn. June 23, 1992) (potential for receiving the maximum sentence upon violation of probation is collateral); *People v. Martinez*, 120 Cal. Rptr. 362, 367 (Ct. App. 1975) (subsequent revocation of probation is "collateral" rather than "direct" consequence of a guilty plea); *People v. Warship*, 319 N.E.2d 507, 509 (Ill. 1974) (probation revocation is collateral consequence of a plea of guilty); *Huffman v. State*, 703 S.W.2d 566, 568 (Mo. Ct. App. 1986) (power of court, upon revocation of probation, to order increased punishment is collateral, not direct, consequence of plea); *State v. Music*, 698 P.2d at 1091 (authority of parole board to extend trial court's "recommended sentence" held to be a collateral consequence of defendant's plea).

probation is revoked. See Wis J I—Criminal SM-32 and the comments thereto. Such a practice seems only fair and will discourage litigation such as this.

*By the Court*.—Order affirmed.