STATE of Wisconsin, Plaintiff-Respondent,

v.

Riad Abdullah ISSA, Defendant-Appellant.

Court of Appeals

*No. 93–1499–CR. Submitted on briefs June 7, 1994.—Decided June 28, 1994.*

(Also reported in 519 N.W.2d 741.)

200

For the defendant-appellant the cause was submitted on the briefs of *Harold D. Block, Sally L. Wellman,* assistant attorney general of Madison, and *Robert D. Donohoo,* deputy district attorney Milwaukee County of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *Michael R. Klos,* assistant attorney general of Madison.

Before Sullivan, Fine and Schudson, JJ.

SCHUDSON, J.  Riad Abdullah Issa appeals from the order denying his postconviction motion to withdraw his guilty pleas. He argues that even though the trial court referred to a guilty plea questionnaire that advised of the potential deportation consequences

of a guilty plea, the trial court's failure to personally advise him of potential deportation violates the mandate of § 971.08(1)(c), STATS., and thus entitles him to withdraw his guilty pleas pursuant to § 971.08(2). We agree with Issa that § 971.08(1)(c) requires the trial court to personally advise a defendant regarding deportation and, further, that mere reference to a guilty plea questionnaire does not satisfy that requirement. We also conclude, however, that under *State v. Chavez*, 175 Wis. 2d 366, 498 N.W.2d 887 (Ct. App. 1993), before the trial court is required to grant Issa's motion to withdraw his guilty pleas, it must determine whether, despite the trial court's failure to personally advise him, Issa understood the potential deportation consequences of his guilty pleas. Therefore, we reverse the trial court's order denying Issa's motion to withdraw his guilty pleas and remand for further proceedings to determine whether Issa understood the potential deportation consequences of his guilty pleas.

Issa was charged with two counts of armed robbery for his holdups of two liquor stores in July 1991. In court appearances on August 8 and September 17, 1991, his lawyer informed the trial court that Issa was a Palestinian lawfully residing in Milwaukee. On December 3, 1991 Issa pled guilty to both counts. The trial court took Issa's plea by directly advising Issa of some of his rights and by referring to a questionnaire form that listed all the rights relinquished with a guilty plea. The trial court, however, never explicitly referred to deportation consequences of a guilty plea. The colloquy included the following:

> THE COURT: Did you and your attorney go through this guilty plea questionnaire and waiver of rights form together?
> DEFENDANT: Yes.

THE COURT: Did he explain to you what your rights are, including your constitutional rights?

DEFENDANT: Yes.

THE COURT: Did he explain to you what the consequences of pleading guilty are?

DEFENDANT: Yes.

THE COURT: Did he answer all of your questions concerning these charges and these proceedings to your satisfaction?

DEFENDANT: Yes, your Honor.

. . . .

THE COURT: Have you conferred sufficiently with your lawyer, so that you're satisfied you understand what you're doing?

DEFENDANT: Yes.

THE COURT: Are you satisfied with the advice and representation Mr. Rhiel [defense counsel] has given you in this case?

DEFENDANT: Yes, I am.

THE COURT: Do you have any questions at all about what you're doing or what the effect of your plea of guilty will be?

DEFENDANT: No.

THE COURT: Do you know of anything to the contrary, Mr. Rhiel?

MR. RHIEL: No, your Honor, I don't.

The guilty plea questionnaire to which the court referred contained this provision:

12. **Deportation:** If I am not a citizen of the United States of America, I know that upon a plea of guilty or no contest and a finding of guilty by the Court for the offense(s) with which I am charged in the criminal complaint or information, I may be deported, excluded from admission to this country, or denied naturalization under federal law.

The trial court found Issa guilty and sentenced him. After being detained for deportation, however, Issa moved to withdraw his guilty pleas.[1] In the affidavit filed in support of his motion, Issa stated:

> I do not remember that paragraph [regarding deportation consequences] in the questionnaire, and I know that I had no relevant discussion with anyone relative to any aspects of that. . . .
> . . . If I had known that by pleading guilty to the 2 counts of armed robbery that this would constitute a ground of deportation, and that I would not have any way of presenting a defense on the deportation, I would never have agreed to plead guilty to the 2 counts.

The trial court denied Issa's motion, concluding that the guilty plea questionnaire in combination with counsel's assurance that he properly advised Issa of his rights provided an adequate basis for acceptance of the guilty pleas.

A defendant who seeks to withdraw a guilty plea on the basis that the trial court allegedly failed to follow the mandated procedures for accepting a guilty plea must make a *prima facie* showing that the trial court failed to follow the necessary procedures. *State v. Bangert*, 131 Wis. 2d 246, 274, 389 N.W.2d 12, 26 (1986). Additionally, the defendant must allege that he

---

[1] At the hearing on his motion to withdraw the guilty pleas, Issa modified his request and asked the court to allow him to withdraw only one of the guilty pleas. This, Issa's counsel explained, would place "the posture on the defense for immigration deportation proceedings in a different . . . status" because "under the United States immigration laws presently with two convictions of crime of moral turpitude this gentleman has no defense against deportability."

or she "did not know or understand the information which should have been provided at the plea hearing." *Id.* Where the defendant makes the required *prima facie* showing, the burden shifts to the State to show by clear and convincing evidence that the defendant's plea was knowingly, voluntarily and intelligently entered despite the inadequacy of the record from the hearing at which the plea was accepted. *Id.* Whether a defendant has made a *prima facie* showing that his plea was defective is a question of law, which on appeal we review without deference to the trial court. *See State v. James*, 176 Wis. 2d 230, 237, 500 N.W.2d 345, 348 (Ct. App. 1993).

A plea may be involuntary because the defendant does not understand the nature of the constitutional rights he or she is waiving. *Bangert*, 131 Wis. 2d at 265-266, 389 N.W.2d at 22. In *Bangert*, the supreme court explained:

> A person must know and understand that constitutional rights are waived by the plea in order for the plea to be voluntarily and intelligently made. The defendant need not specifically waive each right, but the record or other evidence must show that he entered his plea voluntarily and knowingly, with understanding of the rights he was waiving.
>
> . . . .
>
> . . . [W]e . . . require . . . that state courts at the plea hearing follow the provisions set forth in Wis. JI—Criminal SM-32 (1985), Part V, Waiver of Constitutional Rights, *or specifically refer to some portion of the record or communication between defense counsel and defendant which affirmatively exhibits defendant's knowledge of the constitutional rights he will be waiving.* The court must then, as

205

before, ascertain whether the defendant under-
stands he will be waiving certain constitutional
rights by virtue of his guilty or no contest plea.

*Id.* at 270-272, 389 N.W.2d at 24-25 (citations and
footnote omitted; emphasis added).

In *State v. Moederndorfer*, 141 Wis. 2d 823, 416
N.W.2d 627 (Ct. App. 1987), we applied *Bangert* and
clarified that "some portion of the record or communi-
cation between defense counsel and defendant which
affirmatively exhibits defendant's knowledge of the
constitutional rights he will be waiving," *see Bangert*,
131 Wis. 2d at 271, 389 N.W.2d at 25, can include a
guilty plea questionnaire:

> A trial court can accurately assess a defendant's
> understanding of what he or she has read by mak-
> ing a record that the defendant had sufficient time
> prior to the hearing to review the form, had an
> opportunity to discuss the form with counsel, had
> read each paragraph, and had understood each one.

*Moederndorfer*, 141 Wis. 2d at 828, 416 N.W.2d at 630.
In *State v. Hansen*, 168 Wis. 2d 749, 485 N.W.2d 74
(Ct. App. 1992), however, we further addressed
whether a trial court's reference to a questionnaire will
satisfy the requirements of *Bangert* and we explained
that, under some circumstances, such reference may be
insufficient to establish a defendant's understanding of
his or her rights.

In *Hansen*, although the trial court referred to the
questionnaire, and although the defendant said he had
reviewed the form with his lawyer, understood it and
signed it, *see* 168 Wis. 2d at 752, 485 N.W.2d at 75, we
concluded:

[The trial court's] personal colloquy with Hansen did not include any discussion as to the constitutional rights which Hansen was waiving. Instead, the colloquy was limited to whether Hansen had gone over the *Moederndorfer* form with his attorney before he signed it and whether Hansen understood the form. We conclude that such limited personal colloquy is not the *substantive* kind of personal exchange between the trial court and the defendant which *Bangert*, § 971.08 Stats., and *Moederndorfer* require.

. . . .

The plea hearing colloquy in this case establishes only that Hansen had read and understood the form; it does not establish that Hansen understood that by entering his no contest plea he was waiving his applicable constitutional rights.

*Id.* at 755-756, 485 N.W.2d at 77 (emphasis in original). Accordingly, we concluded that Hansen had made a *prima facie* showing that shifted the burden to the State "to show by clear and convincing evidence that Hansen's plea was nevertheless valid." *Id.* at 756, 485 N.W.2d at 77.[2]

---

[2] In *State v. Baeza*, 174 Wis. 2d 118, 127, 496 N.W.2d 233, 236 (Ct. App. 1993), we held "that the *Bangert* avenue for relief is an unavailable remedy for a violation of § 971.08(1)(c), Stats.," because of the specific remedy prescribed in § 971.08(2). *Baeza*, however, involved a case in which the trial court did not advise the defendant of deportation consequences. Further, as we pointed out in *Chavez*, Baeza "did not know of those consequences" so "[t]here was therefore no question of application of the harmless error rule." *State v. Chavez*, 175 Wis. 2d 366, 369 n.1, 498 N.W.2d 887, 888 n.1 (Ct. App. 1993). Here, under *Chavez*, harmless error analysis is relevant, so *Bangert* is applicable. *See id.* Further, unlike *Baeza* and *Chavez*, this case

In this case, therefore, the question is whether the trial court's colloquy that referred to the guilty plea questionnaire satisfied the requirements of § 971.08(1)(c), STATS. We conclude that it did not. Section 971.08, entitled "Pleas of guilty and no contest; withdrawal thereof," provides:

**(1)** Before the court accepts a plea of guilty or no contest, it shall do all of the following:

(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.

(b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.

(c) Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."

**(2)** If a court fails to advise a defendant as required by sub. (1)(c) and a defendant later shows that the plea is likely to result in the defendant's deportation, exclusion from admission to this country or denial of naturalization, the court on the defendant's motion shall vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea. This subsection does not limit the ability to withdraw a plea of guilty or no contest on any other grounds.

the significance of a guilty plea questionnaire; thus, the *Bangert/Moederndorfer/Hansen* analysis also is applicable.

Clearly and unambiguously, § 971.08(1)(c), STATS., requires a trial court to personally advise a defendant of the potential deportation consequences of a guilty plea. Unlike other portions of § 971.08(1), subsection (1)(c) requires the trial court to advise a defendant with specific language. Thus, it provides a less flexible structure than that found in (1)(a) allowing a trial court to "determine," and in (1)(b) allowing a trial court to "make such inquiry" that "satisfies." Therefore, we conclude that a defendant makes a *prima facie* showing where a trial court has failed to personally advise a defendant as specified in § 971.08(1)(c).

This conclusion, however, does not end our inquiry. Section 971.08(2), STATS., states that noncompliance with (1)(c) in combination with a showing that a plea is likely to result in deportation "shall" result in the vacating of the judgment and withdrawal of the plea. In *Chavez*, however, we recently analyzed whether the strictures of § 971.08(2) were subject to harmless error analysis. We explained:

> Chavez ... asks this court to hold as a matter of law that sec. 971.08(2), Stats., mandates the trial court to allow withdrawal of the guilty or no contest plea regardless of his knowledge. Although Chavez concedes that the state may generally overcome a failure to comply with the plea requirements of § 971.08(1) by showing evidence that the defendant knew and understood the necessary information to render his plea voluntary and knowing, he maintains that the legislature simply did not intend to permit such a showing with regard to the provisions of subsec. (2) relating to aliens.
>
> Chavez' argument is straightforward and simple: The statute is unambiguous. It provides that a

defendant "shall" have the right to withdraw his plea and, therefore, his actual knowledge of the consequences of his plea is irrelevant.

Ambiguity may be created by the interaction of separate statutes.. . . In this case, an ambiguity is created by the provisions of § 971.26, Stats.:

> Formal defects. No indictment, information, complaint or warrant shall be invalid, nor shall the trial, judgment or other proceedings be affected by reason of any defect or imperfection in matters of form which do not prejudice the defendant.

This statute is consistent with the harmless error rule.. . .

Thus, § 971.08(2), Stats., could be read literally to mean as it states, that a defendant may withdraw his plea without regard to his actual knowledge of the likelihood of deportation. On the other hand, when read in conjunction with § 971.26, it may be read to mean that the judgment may stand if the failure to inform the defendant did not prejudice him. We therefore conclude that the statute is ambiguous, and turn to the scope, history, context, subject matter and the object of the statute to discern the legislative intent.

. . . That history indicates that the legislature sought to alleviate the hardship and unfairness involved when an alien *unwittingly* pleads guilty or no contest to a charge without being informed of the consequences of such a plea.. . .

Consistent with this legislative history, we conclude that the legislature did not intend a windfall to a defendant who was aware of the deportation consequences of his plea.. . .

*Chavez*, 175 Wis. 2d at 369-371, 498 N.W.2d at 888-889 (citations and footnote omitted; emphasis in original).

Accordingly, although Issa has made the *prima facie* showing of the invalidity of his guilty pleas by virtue of noncompliance with § 971.08(1)(c), STATS., he is not, on that basis alone, automatically entitled to withdraw his guilty pleas. He is, however, entitled to an evidentiary hearing at which the State will have the burden "to show by clear and convincing evidence that [Issa's] plea[s] [were] nevertheless valid."[3] *See Hansen*, 168 Wis. 2d at 756, 485 N.W.2d at 77.

Therefore, the trial court order denying Issa's motion to withdraw his guilty pleas is reversed and the case is remanded for further proceedings consistent with this decision.

*By the Court.*—Order reversed and cause remanded.

FINE, J. (*concurring*). I agree with the majority that an evidentiary hearing is needed to determine whether, in fact, Riad Abdullah Issa knew that he was subject to deportation upon his conviction. I write separately to note two things. First, the presentence report presented to the trial court asserts that Issa "stated that he realizes that because of this offense he can be deported."

Second, as the majority notes, Issa wants to withdraw only one of his guilty pleas so he would stand a better chance in fighting deportation. Majority op. at 204, n.1. Issa pled guilty to two counts of armed robbery. The armed robberies were committed within ten

---

[3] The State concedes that Issa's affidavit "raises the issue of prejudice" and agrees, therefore, that if we conclude that the trial court failed to satisfy the statutory requirement, the case should be remanded for an evidentiary hearing.

days of each other. A charge may not be dismissed without the trial court's approval, and only if the trial court determines that the dismissal is in the public interest. *State v. Kenyon*, 85 Wis. 2d 36, 45-47, 270 N.W.2d 160, 163-165 (1978). Absent extraordinary circumstances not apparent from the record, it is not, in my view, in the public interest to give a defendant a "free" armed robbery; nor is it in the public interest to manipulate the criminal justice system in order to circumvent the immigration laws.