STATE of Wisconsin, Plaintiff-Respondent,

v.

Olayinka Kazeem LAGUNDOYE, Defendant-Appellant.†

Court of Appeals

*Nos. 02–2137, 02–2138 and 02–2139. Submitted on briefs February 4, 2003.—Decided February 12, 2003.*

2003 WI App 63

(Also reported in 659 N.W.2d 501.)

† Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Godfrey Y. Muwonge* of *Godfrey Y. Muwonge's Law Office*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *James M. Freimuth*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. FINE, J. Olayinka Kazeem Lagundoye appeals a circuit-court order denying his postconviction motions seeking vacatur of judgments entered on his guilty pleas in three Milwaukee County circuit-court criminal cases:

- 98CF001261 (two counts of forgery in violation of WIS. STAT. § 943.38(1)(a)) (appeal number 02–2137);

- 96CF966266 (burglary in violation of WIS. STAT. § 943.10(1)(a)) (appeal number 02–2139); and

- 2–614344 (misdemeanor theft in violation of WIS. STAT. § 943.20(1)(b) & (3)) (appeal number 02–2138).

In each of the cases, the trial courts that accepted Lagundoye's guilty pleas did not comply with WIS. STAT. § 971.08(1), which provides:

> Before the court accepts a plea of guilty or no contest, it shall . . . (c) Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."

This mandate is enforced by WIS. STAT. § 971.08(2), which provides, as material here:

> If a court fails to advise a defendant as required by sub. (1) (c) and a defendant later shows that the plea is likely to result in the defendant's deportation, exclusion from admission to this country or denial of naturalization, the court on the defendant's motion shall vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea.

Sections 971.08(1)(c) and 971.08(2) were created by 1985 Wis. Act 252, and became effective April 24, 1986, the day after its publication. *See* Wis. Stat. § 991.11 (unless otherwise specified in act, act is effective day after publication).

¶ 2. On June 19, 2002, the Wisconsin Supreme Court ruled that a defendant is entitled to automatic vacatur of any judgments of conviction imposed on guilty pleas (or their equivalent) if a trial court does not orally tell the defendant about the immigration consequences of the pleas, even though the defendant knew what those consequences were. *State v. Douangmala*, 2002 WI 62, ¶¶ 17–42, 253 Wis. 2d 173, 180–190, 646 N.W.2d 1, 4–9. By June 19, 2002, Lagundoye had exhausted his direct-appeal rights in each of the cases (and, indeed, had already been discharged from his sentences in the burglary and misdemeanor theft cases).[1]

---

[1] There is no evidence in the record that Lagundoye ever appealed from the judgments in the burglary and theft cases. He did appeal his forgery convictions, and we affirmed by summary order on July 25, 2000. *State v. Lagundoye*, No. 99–0364, unpublished slip op. (Wis. Ct. App. July 25, 2000). The August 29, 2000, remittitur was received by the clerk of the circuit court in Milwaukee County on September 9, 2000.

¶ 3. The trial court denied Lagundoye relief. We affirm, and hold that *Douangmala* does not apply to defendants who, like Lagundoye, exhausted their direct-appeal rights before *Douangmala* was issued.[2]

## I.

¶ 4. On February 6, 1997, Lagundoye pled guilty to the burglary (96 CF 966266 — appeal number 02–2139) and to the misdemeanor theft (2–614344 — appeal number 02–2138). Lagundoye signed a guilty-plea questionnaire and waiver-of-rights form acknowledging that he had read "this entire questionnaire, and I understand its contents." By signing the questionnaire, Lagundoye acknowledged:

[2] The Honorable Victor Manian decided the postconviction motions and was not the trial judge in any of the cases. The postconviction court denied relief on two grounds. First, in connection with the cases where Lagundoye had already been discharged from his sentences, the postconviction court held, *inter alia,* that there was no mechanism for relief because WIS. STAT. § 974.06 only permits, in essence, collateral challenge of judgments of conviction by persons seeking release from "custody under sentence of a court." WIS. STAT. § 974.06(1). Second, in connection with the remaining case (the forgery), the postconviction court held that retroactive relief was barred. Given the State's concession that Lagundoye's request for relief should *"probably"* (emphasis by the State) be considered timely, and our resolution of this appeal on retroactivity grounds, we do not discuss the postconviction court's first rationale. *See Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed); *State v. Blalock,* 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989) (cases should be decided on the "narrowest possible ground"); *State v. Holt,* 128 Wis. 2d 110, 124, 382 N.W.2d 679, 687 (Ct. App. 1985) (trial court may be affirmed for a reason other than that on which it relied).

> If I am not a citizen of the United States of America, I know that upon a plea of guilty or no contest and a finding of guilty by the Court for the offense with which I am charged in the criminal complaint or information, I may be deported, excluded from admission to this country or denied naturalization under federal law.

The trial judge did not orally tell Lagundoye about the consequences for non-citizens of his guilty pleas, as required by WIS. STAT. § 971.08(1).

¶ 5. On April 24, 1998, Lagundoye pled guilty to the two counts of forgery (98CF001261 — appeal number 02–2137). As with the February 6, 1997, pleas, Lagundoye signed a guilty-plea questionnaire and waiver-of-rights form acknowledging that he had read "this entire questionnaire, and I understand its contents." By signing this questionnaire, Lagundoye again acknowledged:

> If I am not a citizen of the United States of America, I know that upon a plea of guilty or no contest and a finding of guilty by the Court for the offense with which I am charged in the criminal complaint or information, I may be deported, excluded from admission to this country or denied naturalization under federal law.

The trial judge did not orally tell Lagundoye about the consequences for non-citizens of his guilty pleas, as required by WIS. STAT. § 971.08(1).

¶ 6. By showing that the trial judges did not tell him of the immigration consequences of his guilty pleas, Lagundoye has satisfied the first requirement for relief under WIS. STAT. § 971.08(2). Additionally, the State does not dispute that Lagundoye is subject to the adverse immigration consequences set out in

810

§ 971.08(2). Thus, he also has satisfied the second requirement. The question remains, however, whether Lagundoye is entitled to vacatur of the judgments even though he does not contest that he knew the consequences of his guilty pleas without having them orally spelled out by the trial court. We hold that he is not.

## II.

¶ 7. *Douangmala* overruled a long line of court of appeals's decisions that held that a non-citizen defendant was not entitled to vacatur under WIS. STAT. § 971.08(2) if he or she knew what might happen to his or her immigration status upon conviction even though the trial court did not orally explain it, as required by WIS. STAT. § 971.08(1)(c). *See, e.g., State v. Chavez*, 175 Wis. 2d 366, 370–371, 498 N.W.2d 887, 888 (Ct. App. 1993) (applying harmless-error test in WIS. STAT. § 971.26); *Douangmala*, 2002 WI 62 at ¶¶ 37–40, 253 Wis. 2d at 187–188, 646 N.W.2d at 8 (collecting and analyzing court of appeals' decisions). Whether *Douangmala* should be applied retroactively to defendants, like Lagundoye, who have already exhausted their direct appeals is an issue of law that we decide *de novo. State v. Howard*, 211 Wis. 2d 269, 276, 564 N.W.2d 753, 757 (1997).

¶ 8. There are two aspects of retroactive-analysis applicable to criminal cases. The first is where a new judicial decision vindicates either rights that go to the heart of the "factfinding process" or recognizes, albeit belatedly, that certain conduct "is constitutionally immune from punishment." *United States v. United States*

*Coin and Currency*, 401 U.S. 715, 723–724 (1971).[3] *See also Williams v. United States*, 401 U.S. 646, 653 (1971) ("Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect.").

¶ 9. The second aspect is where the new judge-created rule is one of procedure and does not affect either the integrity of the factfinding process or the government's attempt to penalize conduct that, as

---

[3] In *United States v. United States Coin and Currency*, 401 U.S. 715 (1971), the government sought the forfeiture of money belonging to Donald J. Angelini because, it alleged, he was using the money in a "bookmaking operation in violation of the[ ] internal revenue laws." *Id.*, 401 U.S. at 716. Angelini claimed that he had a Fifth Amendment privilege against the type of self-incrimination that he claimed would result from his compliance with the registration and gambling-tax-payment requirements under the statutory scheme pursuant to which the forfeiture was sought. *Id.*, 401 U.S. at 716–717. Decisions by the Supreme Court extant when some of Angelini's property was seized had upheld the challenged requirements. *Id.*, 401 U.S. at 722–723. Subsequent decisions by the Court struck them down. *United States Coin and Currency* applied those later decisions retroactively because the "conduct being penalized [Angelini's assertion of his Fifth Amendment rights] is constitutionally immune from punishment." *Id.*, 401 U.S. at 724. Oddly, although Angelini had not yet exhausted his direct appellate rights before the later decisions were issued, only one of the five justices in the majority would have relied on that fact in defeating the government's argument that those decisions should not be applied retroactively to Angelini. *Id.*, 401 U.S. at 724 n.13.

phrased by the *United States Coin and Currency* quote in the preceding paragraph, is "constitutionally immune from punishment." If the new rule is of this type, it will not be applied retroactively to affect cases where the direct-appeal rights were exhausted before the rule was announced:

> New rules merit retroactive application on collateral review only in two instances. In the first instance, a "new rule should be applied retroactively if it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." [Quoted source omitted.] "Second, a new rule should be applied retroactively if it requires observance of those procedures that are implicit in the concept of ordered liberty." [Quoted source omitted.]

*Howard*, 211 Wis. 2d at 282, 564 N.W.2d at 760 (applying retroactively the requirement announced in *State v. Peete*, 185 Wis. 2d 4, 18–19, 517 N.W.2d 149, 154 (1994), that there be a nexus between a defendant's possession of a dangerous weapon and the defendant's drug-crime conduct before the defendant could be convicted of a drug crime while possessing a dangerous weapon).

¶ 10. The new rule announced by *Douangmala* did not either, in the words of *Howard*, put previously declared criminal conduct "beyond the power of the criminal law-making authority to proscribe" or require "observance of those procedures that are implicit in the concept of ordered liberty." *Howard*, 211 Wis. 2d at 282, 564 N.W.2d at 760. Rather, *Douangmala* is a simple statutory construction case, applying the clear language of Wis. Stat. § 971.08(2) to carry out the provision's mandate. *Douangmala*, 2002 WI 62 at ¶¶ 18–31, 253 Wis. 2d at 181–186, 646 N.W.2d at 5–7. Accordingly, it

did not adopt the type of new rule that is applied retroactively to defendants who have exhausted their direct appeals. *See Howard*, 211 Wis. 2d at 282, 564 N.W.2d at 760. Thus, the pre-*Douangmala* law applies to Lagundoye's motion to withdraw his guilty pleas.

¶ 11. Unlike the situation in *State v. Issa*, 186 Wis. 2d 199, 519 N.W.2d 741 (Ct. App. 1994), where we remanded for an evidentiary hearing on Issa's claim that he did not know about the adverse immigration consequences of his guilty pleas even though he signed an attestation that he did know, *id.*, 186 Wis. 2d at 204, 211, 519 N.W.2d at 743, 745–746, Lagundoye does not contend that he did not know the immigration consequences of his guilty pleas when he entered them. Thus, as we explained in *Chavez*, to vacate the judgments merely because the trial courts did not recite orally what Lagundoye already knew is not only not required by any conceivable concept of "ordered liberty" but would also give to Lagundoye an unwarranted "windfall." *See Chavez*, 175 Wis. 2d at 371, 498 N.W.2d at 889 ("[T]he legislature did not intend a windfall to a defendant who was aware of the deportation consequences of his plea."). We affirm the trial court's order denying Lagundoye's motion for postconviction relief.

*By the Court.*—Order affirmed.