STATE of Wisconsin, Plaintiff-Respondent,

v.

Olayinka Kazeem LAGUNDOYE, Defendant-Appellant-Petitioner.

Supreme Court

*Nos. 02–2137 through 02–2139.*
*Oral argument October 13, 2003.—Decided January 30, 2004.*

2004 WI 4

(Also reported in 674 N.W.2d 526.)

For the defendant-appellant-petitioner there were briefs by *Godfrey Y. Muwonge* and *Godfrey Y. Muwonge's Law Office,* Milwaukee, and oral argument by *Godfrey Y. Muwonge.*

For the plaintiff-respondent the cause was argued by *James M. Freimuth,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. JON P. WILCOX, J. Olayinka Kazeem Lagundoye (Lagundoye) seeks review of a published court of appeals decision, *State v. Lagundoye*, 2003 WI App 63, 260 Wis. 2d 805, 659 N.W.2d 501, which affirmed an order of the Milwaukee County Circuit Court, Victor Manian, Judge, denying his post-conviction motions seeking a vacatur of judgments rendered against him in three separate circuit court criminal cases in Milwaukee County.

## I. ISSUE

¶ 2. The issue presented on appeal is whether the rule we announced in *State v. Douangmala*, 2002 WI 62, 253 Wis. 2d 173, 646 N.W.2d 1, can be applied retroactively to a defendant who exhausted his direct appeal rights before *Douangmala* was decided, such that he is entitled to withdraw his pleas in criminal cases where the circuit court failed to advise him of the possible deportation consequences of his plea under Wis. Stat. § 971.08(1)(c) (1997–98)[1] and the defendant meets the requirements for plea withdrawal under Wis. Stat. § 971.08(2). We conclude that the rule we announced in *Douangmala* is a new rule of criminal procedure that can be retroactively applied only to cases that were not yet final when *Douangmala* was decided. Further, we conclude that because the rule in *Douangmala* does not fall within either of the two narrow exceptions to this general rule of nonretroactivity, it cannot be applied retroactively to collateral appeals. Finally, we conclude that under the law, as it existed when Lagundoye entered his pleas, the error of the circuit courts in failing to advise Lagundoye of the possible deportation

---

[1] All subsequent references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

consequences of his plea under § 971.08(1)(c) was harmless. Accordingly, we affirm the court of appeals' decision.

## II. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶ 3. On February 6, 1997, Lagundoye pled guilty to theft[2] and burglary[3] charges as part of a plea agreement. He was sentenced on these two charges, and judgment was rendered on March 27, 1997. On April 24, 1998, Lagundoye, in a separate criminal case,[4] pled guilty to two counts of forgery pursuant to a plea agreement. He was thereafter sentenced on June 30, 1998, and judgment of conviction was entered on July 1, 1998.

¶ 4. It is undisputed that the circuit court in all three cases failed to comply with the mandates of Wis. Stat. § 971.08.[5] Section 971.08(1) provides:

> Before the court accepts a plea of guilty or no contest, it shall do all of the following:
>
> . . . .

---

[2] Case No. 96–CM–614344

[3] Case No. 96–CF–966266

[4] Case No. 98–CF–001261

[5] Lagundoye also received a conviction in Milwaukee County in September 1996 for theft, Case No. 96–CM–610289. Lagundoye initially sought similar relief in this case, but later withdrew his request, as the record indicated that the circuit court, Timothy G. Dugan, Judge, had, in fact, given the oral deportation warning. Thus, this conviction is not subject to the present appeal. Interestingly, this conviction, where Lagundoye did receive the oral warning, predated the other three convictions that are the subject of this appeal.

(c) Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."

. . . .

Section 971.08(2) provides the remedy if the circuit court fails to comply with the above mandate:

If a court fails to advise the defendant as required by sub. (1)(c) and the defendant later shows that the plea is likely to result in the defendant's deportation, exclusion from admission to this country or denial of naturalization, the court on the defendant's motion shall vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea. This subsection does not limit the ability to withdraw a plea of guilty or no contest on any other grounds.

Wis. Stat. § 971.08(2).

¶ 5. At the time Lagundoye entered his pleas, the law governing the application of § 971.08 was controlled by *State v. Chavez,* 175 Wis. 2d 366, 498 N.W.2d 887 (Ct. App. 1993). The court of appeals in *Chavez* concluded that the interaction of § 971.08 and Wis. Stat. § 971.26[6] required an appellate court to employ a harmless-error analysis when a defendant sought to withdraw his plea based on a circuit court's failure to

---

[6] Wisconsin Stat. § 971.26 provides: "No indictment, information, complaint or warrant shall be invalid, nor shall the trial, judgment or other proceedings be affected by reason of any defect or imperfection in matters of form which do not prejudice the defendant."

84

comply with the dictates of § 971.08(1)(c). *Id.* at 370–71. The court of appeals in *Chavez* further concluded that a circuit court's failure to comply with the mandate in § 971.08(1)(c) constituted harmless error if the defendant was "aware of the potential for deportation when he entered his plea." *Id.* at 368, 371.[7] Lagundoye did not seek a plea withdrawal under § 971.08(2) for any of his three convictions on direct appeal.

¶ 6. Lagundoye's application for status as a lawful permanent resident was denied on December 21, 2001. On January 3, 2002, the United States Department of Immigration and Naturalization Service notified Lagundoye that it had commenced deportation proceedings against him arising out of his criminal convictions. Thereafter, on June 19, 2002, this court issued its opinion in *Douangmala*, 253 Wis. 2d 173. In *Douangmala*, we concluded:

> Wis. Stat. § 971.08(1)(c) sets forth the language a circuit court must use to inform a defendant of the deportation consequences of entering a plea of guilty or no contest. . . . If a circuit court fails to give the statutorily mandated advice and if a defendant moves the court and demonstrates that the plea is likely to result in the defendant's deportation, then § 971.08(2) requires the circuit court to vacate the conviction and

---

[7] Three subsequent decisions by the court of appeals followed the harmless-error analysis announced in *State v. Chavez*, 175 Wis. 2d 366, 498 N.W.2d 887 (Ct. App. 1993). *See State v. Garcia*, 2000 WI App 81, ¶¶ 1, 11–13, 234 Wis. 2d 304, 610 N.W.2d 180; *State v. Lopez*, 196 Wis. 2d 725, 731–32, 539 N.W.2d 700 (Ct. App. 1995); *State v. Issa*, 186 Wis. 2d 199, 209–210, 519 N.W.2d 741 (Ct. App. 1994).

to permit the defendant to withdraw the guilty or no-contest plea.

*Id.,* ¶ 46.[8]

¶ 7. On July 22, 2002, Lagundoye moved to re-open and vacate the aforementioned judgments of convictions and withdraw his respective pleas under § 971.08(2),[9] seeking to benefit from the freshly annunciated rule in *Douangmala.* At the time Lagundoye filed his motion to vacate his convictions, he had completely discharged his sentences relating to the theft and burglary convictions, but was still serving his sentence in relation to the two forgery convictions.

¶ 8. The circuit court denied Lagundoye's motion for post-conviction relief with respect to the two convictions in which he had completely served his sentence because it found it lacked jurisdiction to consider a

---

[8] In so holding, we expressly overruled *Chavez, Issa, Lopez,* and *Garcia* to the extent they applied a harmless error analysis to violations of Wis. Stat. § 971.08(1)(c). *State v. Douangmala,* 2002 WI 62, ¶ 42, 253 Wis. 2d 173, 646 N.W.2d 1.

[9] Pursuant to § 971.08(2), a court shall vacate any applicable judgment against the defendant and permit the defendant to withdraw his plea and enter another if "a court fails to advise a defendant as required by sub. (1)(c) and *a defendant later shows* that the plea is likely to result in the defendant's deportation . . . ." (emphasis added). There are no cases interpreting the phrase "later shows," that would indicate when a defendant may properly bring a § 971.08(2) motion. The federal government notified Lagundoye on January 3, 2002, that it had commenced deportation proceedings against him. Lagundoye did not file his § 971.08(2) motion until July 22, 2002, six months after he learned that he could be deported. However, as the State has conceded Lagundoye's motion for plea withdrawal was timely filed, we need not address the issue of when a defendant may properly bring a motion for relief under § 971.08(2).

collateral challenge to a guilty plea where the defendant was no longer in state custody. With respect to his remaining conviction, the circuit court denied Lagundoye's motion on the grounds that the rule in *Douangmala* was a new rule of criminal procedure and applies retroactively only to cases that were pending on direct review or not yet final when *Douangmala* was decided.

¶ 9. The court of appeals did not address the jurisdictional issue relied upon by the circuit court with respect to two of Lagundoye's convictions; instead, it affirmed the circuit court's conclusion that the rule in *Douangmala* does not apply retroactively to defendants who exhausted their direct appeal rights before *Douangmala* was decided. *Lagundoye,* 260 Wis. 2d 805, ¶ 3 & n.2. The court of appeals then concluded that all three of Lagundoye's cases were governed by the pre-*Douangmala* harmless-error analysis, and Lagundoye was not entitled to withdraw his pleas because he did not contend that he did not know of the deportation consequences of his pleas. *Id.,* ¶¶ 10–11.

¶ 10. On August 5, 2002, the United States Department of Justice Immigration Court entered an order deporting Lagundoye to Nigeria. Counsel has informed the court that Lagundoye was in fact deported to Nigeria subsequent to the court of appeals' decision.[10]

---

[10] As Lagundoye has already served two of his sentences and has been deported to Nigeria, there is a possibility that this case is moot. This court has defined mootness as follows:

"A moot case ... [is] one which seeks to determine an abstract question which does not rest upon existing facts or rights, or which seeks a judgment in a pretended controversy when in reality there is none, or one which seeks a decision in advance about a right before it has been asserted or contested, or a judgment upon some

## III. ANALYSIS

¶ 11. There are three lines of cases that govern whether a rule should be applied retroactively to criminal cases on appeal. These cases establish that whether a rule should be applied retroactively is dependent upon two threshold determinations: 1) whether the rule is a new rule of substance or new rule of criminal procedure and 2) whether the case which seeks to benefit from retroactive application is on direct review or is final, such that it is before the court on collateral review.

■■

¶ 12. First, a new rule of substantive criminal law is presumptively applied retroactively to all cases, whether on direct appeal or on collateral review. *See Bousley v. United States,* 523 U.S. 614, 620–21 (1998); *State v. Howard,* 211 Wis. 2d 269, 283–85, 564 N.W.2d 753 (1997), overruled on other grounds by *State v. Gordon,* 2003 WI 69, ¶ 40, 262 Wis. 2d 380, 663 N.W.2d

matter which when rendered for any cause cannot have any practical legal effect upon the existing controversy."

*State ex rel. La Crosse Tribune v. Circuit Ct. for La Crosse County,* 115 Wis. 2d 220, 228, 340 N.W.2d 460 (1983)(quoting *Wisconsin Employment Relations Bd. v. Allis Chalmers W. Union,* 252 Wis. 436, 440–41, 32 N.W.2d 190(1948)).

Counsel indicated at oral argument that if Lagundoye's convictions are vacated and his pleas withdrawn, Lagundoye could petition the federal government for readmission into the United States. Thus, this decision could, theoretically, have a practical effect upon the existing controversy. In any event, both parties agree that the issue is not moot, and we believe the issue of the potential retroactive application of a ruling of this court to cases on collateral review involves an issue of great public importance that is likely to reoccur. *See State v. Leitner,* 2002 WI 77, ¶ 14, 253 Wis. 2d 449, 646 N.W.2d 341.

765. Second, Wisconsin follows the federal rule announced in *Griffith v. Kentucky,* 479 U.S. 314, 328 (1987), that new rules of criminal procedure are to be applied retroactively to all cases pending on direct review or non-finalized cases still in the direct appeal pipeline. *State v. Koch,* 175 Wis. 2d 684, 694, 499 N.W.2d 152 (1993).

¶ 13. Third, a new rule of criminal procedure generally cannot be applied retroactively to cases that were final before the rule's issuance under the federal nonretroactivity doctrine announced by the Supreme Court plurality opinion in *Teague v. Lane,* 489 U.S. 288 (1989), and later adopted by the majority of the Court in *Graham v. Collins,* 506 U.S. 461, 467 (1993). Under *Teague,* a new rule of criminal procedure is not applied retroactively to cases on collateral review unless it falls under either of two well-delineated exceptions. *Teague,* 489 U.S. at 307. First, a new rule of criminal procedure should be applied retroactively to cases on collateral review if it "places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.' " *Id.* (citation omitted). Second, a new rule of criminal procedure should be applied retroactively to cases on collateral review if it encompasses procedures that " 'are implicit in the concept of ordered liberty.' " *Id.* (citation omitted).

¶ 14. While *Teague,* read narrowly, applies only to federal habeas corpus proceedings, Wisconsin has adopted the *Teague* framework in all cases involving new rules of constitutional criminal procedure on collateral review pursuant to Wis. Stat. § 974.06. *State v. Horton,* 195 Wis. 2d 280, 287–90, 536 N.W.2d 155 (Ct. App. 1995). Further, this court has extended the *Teague* retroactivity analysis to cases on collateral review in-

volving a new rule based on a statutory right. *See State ex rel. Schmelzer v. Murphy,* 201 Wis. 2d 246, 256–59, 548 N.W.2d 45 (1996).[11]

¶ 15. Both parties cite to *Schmelzer* for the proposition that Wisconsin has carved out a third exception to the general rule of nonretroactivity in *Teague.* In fact, *Howard* states that this court in *Schmelzer* "articulated a third exception, to include claims that can only be raised on collateral review." *Howard,* 211 Wis. 2d at 285. However, this is a misreading of *Schmelzer.*

¶ 16. *Teague* was somewhat unique in that it discussed the retroactive application of a new rule while deciding whether to adopt the rule. *Teague,* 489 U.S. at 315. After discussing the aforementioned general principles of retroactivity, *Teague* went on to hold "habeas

---

[11] The dissent argues that we need not follow *Teague v. Lane,* 489 U.S. 288 (1989), and that this court may decide for itself whether a new interpretation of a statute may be applied retroactively to cases on collateral review. Dissent, ¶ 72 n.25. However, this court has unequivocally decided that Wisconsin has elected to follow the federal retroactivity analysis as articulated by the United States Supreme Court in *Teague* and *Griffith v. Kentucky,* 479 U.S. 314 (1987). *See State v. Lo,* 2003 WI 107, ¶ 63, 264 Wis.2d 1, 665 N.W.2d 756; *State v. Howard,* 211 Wis. 2d 269, 282–84, 564 N.W.2d 753 (1997), overruled on other grounds by *State v. Gordon,* 2003 WI 69, ¶ 40, 262 Wis. 2d 380, 663 N.W.2d 765; *State ex rel. Schmelzer v. Murphy,* 201 Wis. 2d 246, 256–59, 548 N.W.2d 45 (1996); *State v. Koch,* 175 Wis. 2d 684, 694, 499 N.W.2d 152 (1993). Having elected to follow *Teague,* Wisconsin has developed its own robust case law regarding retroactivity, which this decision applies to the facts of this case. While the divergent foreign authorities cited by the dissent may make the *Teague* analysis blurry and uncertain, the aforementioned Wisconsin cases, as discussed below, have applied the *Teague* doctrine in a consistent and clear manner. Today's decision merely follows Wisconsin's formulation of the *Teague* analysis, as developed by the above authorities.

corpus cannot be used as a vehicle to *create* new constitutional rules of criminal procedure unless those rules would be applied retroactively to *all* defendants on collateral review through one of the two exceptions we have articulated." *Id.* at 316 (first emphasis added). The Court then declined to adopt the rule sought by petitioner because it would not fit within either of the two exceptions. *Id.*

¶ 17. It is this *later* holding that the Wisconsin Supreme Court in *Schmelzer* decided not to follow. In discussing the second holding of *Teague,* this court stated:

> [T]he *Teague* plurality also holds that "habeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure unless those rules would be applied retroactively to *all* defendants on collateral review through one of the two exceptions we have articulated." . . . The rule we here announce, based on a statutory right to counsel and not a constitutional right, does not rise to the level of giving protection to a "primary activity" or invoking an "absolute prerequisite to fundamental fairness," . . . so neither exception allowing retroactivity is present. However, . . . a claim of ineffective assistance of appellate counsel may *only* be heard through a petition for a writ of habeas corpus. Applying *Teague* strictly would mean that this court could *never* announce a new rule of law relating to this type of claim unless the new rule fell into one of two exceptions, a result plainly absurd. *We therefore conclude that where, as in the present situation, a type of claim may only be made through a form of collateral relief, the creation of new rules of law is not forbidden by the Teague rule as adopted by this court for use in Wisconsin.*

*Schmelzer,* 201 Wis. 2d at 257–58 (final emphasis added) (citations omitted).

¶ 18. Thus, *Schmelzer* parted ways with *Teague* only insomuch as *Teague* held that courts could not *create* new rules of criminal procedure on habeas corpus review unless they fell within either of the two nonretroactivity exceptions. *Schmelzer* did not deviate from or modify *Teague* as it pertained to the retroactive *application* of a new rule; in fact, it proceeded to apply the *Teague* retroactivity analysis: "[W]e conclude that we may apply the new rule announced in this case to the defendant, Schmelzer, although, *consistent with Teague,* we do not apply it retroactively to cases finalized before the issuance of this opinion." *Schmelzer,* 201 Wis. 2d at 258 (emphasis added).[12]

---

[12] We note that in our latest application of the *Teague* doctrine to a new interpretation of a statute, *Lo,* 264 Wis. 2d 1, ¶¶ 62–63, we recognized no such "third exception." Furthermore, recognizing an exception where a claim can be brought only on collateral review would swallow the general rule of nonretroactivity and conflict with the decisions in *State v. Horton,* 195 Wis. 2d 280, 536 N.W.2d 155 (Ct. App. 1995) and *Lo. Horton* held that the federal *Teague* retroactivity analysis applies "for all cases on collateral review in our state courts under § 974.06, Stats." *Horton,* 195 Wis. 2d at 290. Subsequently, this court in *Lo* reiterated, "claims of error that could have been raised on direct appeal or in a previous § 974.06 motion are barred from being raised in a subsequent § 974.06 motion, absent a showing of a sufficient reason." *Lo,* 264 Wis. 2d 1, ¶ 15. Thus, in most instances, a claim brought under § 974.06 is one that could only be brought on collateral appeal. If we were to recognize a third exception to the *Teague* doctrine for cases that can only be brought on collateral appeal, the general rule of nonretroactivity announced in *Teague* would not apply to most § 974.06 motions. However, *Horton* specifically held that the *Teague* analysis is applicable to *all* § 974.06 motions. *Horton,* 195 Wis. 2d at 290.

█

¶ 19. *Schmelzer,* therefore, stands for the proposition that this court can create a new rule of criminal procedure on habeas corpus review and apply the new rule to the case before it—the habeas case wherein the rule was created—even if that case could have come to this court only on collateral review. The court can create a new rule in this limited situation, even though the rule would not apply retroactively to other cases that are final. However, *Schmelzer* does not stand for the proposition that this court can apply a *previously* announced new rule retroactively to a case on collateral review when the rule does not otherwise fall within either of the two *Teague* exceptions. Therefore, we withdraw our language from *Howard,* 211 Wis. 2d at 285, to the extent it implies that Wisconsin recognizes a third exception to the general rule of nonretroactivity for cases on collateral review.

█

¶ 20. Applying these principles to the case at bar, it is undisputed that all of Lagundoye's underlying criminal cases were final when *Douangmala* was decided and that his appeal is a collateral challenge to these convictions. A case is final if the prosecution is no longer pending, a judgment or conviction has been entered, the right to a state court appeal from a final judgment has been exhausted, and time for certiorari review in the United States Supreme Court has expired. *See Horton,* 195 Wis. 2d at 284 n.2; *Koch,* 175 Wis. 2d at 694 n.3.[13]

---

[13] With respect to Lagundoye's burglary and theft charges, the record indicates that judgment of conviction was entered March 27, 1997, and Lagundoye has finished serving these sentences. The record does not indicate that Lagundoye pur-

¶ 21. Next, we must determine whether the rule we announced in *Douangmala* worked a substantive change in the criminal law or whether it was a new rule of criminal procedure. In *E.B. v. State,* 111 Wis. 2d 175, 189, 330 N.W.2d 584 (1983), this court held that " '*substantive law* is that which declares what acts are crimes and prescribes the punishment therefor; whereas, procedural law is that which provides or regulates the steps by which one who violates a criminal statute is punished.' " (citing *Roberts v. Love,* 333 S.W.2d 897, 901 (Ark. 1960); *State v. Garcia,* 229 So.2d 236, 238 (Fla. 1969); *State v. Augustine,* 416 P.2d 281, 283 (Kan. 1996)) (emphasis in original).

---

sued an appeal with respect to these charges. Pursuant to Wis. Stat. § 809.30(2)(b), he had 20 days from the date of sentencing or conviction to serve notice of intent to appeal. As he did not appeal these convictions within the statutory timeline, his right to a direct appeal expired.

Regarding Lagundoye's forgery charges, the record indicates that the circuit court entered judgment of conviction on July 1, 1998. Thereafter, on January 11, 1999, Lagundoye, acting pro se, filed a motion to modify his sentence. The circuit court denied this motion on January 12, 1999, and Lagundoye filed his notice of appeal on February 5, 1999. On July 25, 2000, the court of appeals affirmed the circuit court. The record does not reflect that Lagundoye took any other action, save his present challenge, regarding these charges. Finally, under U.S. Sup. Ct. R. 13.1 (1998), the 90-day time limit for filing a writ of certiorari in the United States Supreme Court regarding his forgery convictions has run and there is no indication in the record that he pursued such relief. Thus, Lagundoye has exhausted his direct appeal rights in relation to his two forgery convictions.

¶ 22. The dissent cites to *Bousley,* 523 U.S. at 620–21, for the proposition that *Teague* does not apply where a court interprets a criminal statute. Dissent, ¶¶ 91–92.[14] This statement is true only if one assumes that all criminal statutes are "substantive." The Court in *Bousley* considered whether its decision in *Bailey v. United States,* 516 U.S. 137, 144 (1995), which changed the elements for "use of a firearm" under 11 U.S.C. § 924(c)1, should be applied retroactively. *Bousley,* 523 U.S. at 616–18. The new rule in *Bailey* was properly characterized as "substantive" because it changed the nature of the crime by altering what acts were proscribed under the statute. *See E.B.,* 111 Wis. 2d at 189.[15] However, a statute in the criminal code that

---

[14] The dissent cites many foreign cases that have interpreted *Bousley v. United States,* 523 U.S. 614 (1998), to mean that the *Teague* analysis does not apply to judicial interpretation of statutes. Dissent, ¶ 92 n.41. However, these authorities are contrary to Wisconsin law. This court applied the *Teague* analysis to new interpretations of criminal procedural statutes in both *Lo,* 264 Wis. 2d 1, ¶¶ 58–64, and *Schmelzer,* 201 Wis. 2d at 257–58.

[15] Thus, *Bousley,* 523 U.S. at 620–21, involved the question of whether the defendant's plea was knowing and voluntary only because the decision in *Bailey v. United States,* 516 U.S. 137, 144 (1995), changed the elements of Bousley's underlying offense. As the elements of his offense had been altered, he could rightfully argue that his plea was involuntary because he was misinformed as to the elements of his offense. *See Bousley,* 523 U.S. at 617–18. As our decision in *Douangmala* did not legalize the underlying offenses for which Lagundoye was convicted or add an additional element thereto, this case, unlike *Bousley,* does not involve the issue of whether Lagundoye knowingly and voluntarily entered into his pleas. Even if this case did involve the issue of whether Lagundoye knowingly and

95

"regulates the steps by which one who violates a [substantive] criminal statute is punished" is, by definition, procedural. *Id.*

¶ 23. The dissent further mischaracterizes *Bousley* by arguing the Court's decision was based on the fact that the rule involved was not new. Dissent, ¶¶ 58–59. The *Bousley* Court did not follow *Teague* because of the important "distinction between substance and procedure," noting that

> decisions of this Court holding that a substantive federal criminal statute does not reach certain conduct, like decisions placing conduct " 'beyond the power of the criminal law-making authority to proscribe' "[i.e. decisions announcing substantive rules], necessarily carry a significant risk that a defendant stands convicted of "an act that the law does not make criminal."

*Bousley,* 523 U.S. at 620 (citations omitted). As the above language from *Bousley* unambiguously indicates, the Court's decision to not follow *Teague* resulted from

voluntarily entered into his pleas, *Bousley* would be of no use to the dissent. The Court in *Bousley* ultimately concluded that the defendant had waived his right to challenge his plea because he did not raise the issue on direct review.

> "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." And even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review. . . . Indeed, "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas."

*Bousley,* 523 U.S. at 621 (citations omitted). As Lagundoye did not challenge his pleas on direct appeal on the basis that they were not knowing and voluntary, the dissent's attempt to covert this case into a question of whether Lagundoye knowingly and voluntarily entered into his plea is unavailing.

the fact that the rule announced in *Bailey* was a substantive rule such that *Bousley* may have been "misinformed as to the true nature of the charges against him." *Id.* at 619.

¶ 24. The dissent further argues that the rule in *Douangmala* was substantive law because Lagundoye's convictions would be vacated under *Douangmala.* Dissent, ¶ 87. However, the test for determining whether a new rule constitutes substantive law is not whether the defendant's convictions would be reversed under the new rule or whether the new rule has a "substantive impact" on a defendant. Dissent, ¶ 84. Rather, the test for determining whether a new rule is substantive or procedural is whether the new rule affected the legality of the underlying conduct for which he was convicted. *Bousley,* 523 U.S. at 620; *See also State v. Kurzawa,* 180 Wis. 2d 502, 512, 509 N.W.2d 712 (1994) (noting that when a new rule "criminalized conduct that was innocent when committed, it could not be retroactively applied" because of ex post facto concerns); *E.B.,* 111 Wis. 2d at 189 (defining "substantive law").

¶ 25. The rule we announced in *Douangmala* merely repudiated the harmless-error analysis previously used to determine whether a defendant could withdraw his plea if a circuit court violated the dictates of Wis. Stat. § 971.08(1)(c). We did not declare any act to be illegal or proscribe the punishment for an act; rather, we simply modified the procedure for relief when a circuit court violates a statutory rule of procedure. Notably, *Douangmala* did not legalize Lagundoye's acts of stealing property on multiple occasions for which he was convicted or add any additional element to the charged crimes. Thus, the rule in *Douangmala* is prop-

erly characterized as a rule of criminal procedure and not a substantive rule of criminal law.

¶ 26. Likewise, it is clear that under Wisconsin's formulation of the *Teague* doctrine, the rule we announced in *Douangmala* was "new." " '[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.' " *State v. Lo,* 2003 WI 107, ¶ 62 n.1, 264 Wis. 2d 1, 665 N.W.2d 756 (quoting *Teague,* 489 U.S. at 301) (emphasis in original).[16] The proper inquiry is not whether a case implicated an "old notion." Dissent, ¶ 70. Rather,

> "a case announces a new rule if its outcome was susceptible to debate among reasonable minds, or if a contrary result would not have been an illogical or even a grudging application of prior precedent." In contrast, a case extends an old rule only if its holding is "compelled or dictated by existing precedent."

*Horton,* 195 Wis. 2d at 291 (citations omitted).[17] There-

---

[16] *See also Teague,* 489 U.S. at 301 ("In general, however, a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government.").

[17] Contrary to the dissent's assertion, the fact that the interpretation given to § 971.08 by *Chavez* was subsequently determined to be incorrect does not render that interpretation illogical. Dissent, ¶¶ 74–78. As this court has often stated, "[s]tatutes relating to the same subject matter should be read together and harmonized when possible." *Hubbard v. Messer,* 2003 WI 145, ¶ 9, 267 Wis. 2d 92, 673 N.W.2d 676. The court of appeals in *Chavez* interpreted § 971.08 in conjunction with § 971.26. *Chavez,* 175 Wis. 2d at 370–71. Both statutes concern when a defendant may be relieved of a judgment based on a defect in the proceedings. Thus, while the court of appeals erred

fore, the pertinent question is not whether the issue or question before the court was pre-existing, dissent, ¶ 59, but whether the court's holding or the rule it announced adhered to precedent on a pre-existing issue.

¶ 27. The result in *Douangmala* was not dictated by precedent; it overruled a line of precedent applying the harmless-error analysis to violations of § 971.08(1)(c). The harmless-error rule announced in *Chavez* was issued in 1993, followed by *State v. Issa,* 186 Wis. 2d 199, 519 N.W.2d 741 (Ct. App. 1994); *State v. Lopez,* 196 Wis. 2d 725, 539 N.W.2d 700 (Ct. App. 1995); and *State v. Garcia,* 2000 WI App. 81, 234 Wis. 2d 304, 610 N.W.2d 180, and remained the law until 2002. This court denied petitions for review in *State v. Lopez,* 197 Wis. 2d clxiv (1995), and *State v. Garcia,* 234 Wis. 2d 178 (2000). Thus, while application of the harmless-error rule to § 971.08(2) was abandoned by this court in *Douangmala,* its utilization certainly was not illogical, nor unsusceptible to debate among reasonable minds.

¶ 28. The fact that our rule in *Douangmala* was based on the plain language of § 971.08(2) does not change this conclusion. This court in *Schmelzer,* 101 Wis. 2d at 253, based its recognition of a right to counsel in petitions for review on pre-existing statutes, but nonetheless considered the right to counsel to be a "new" rule. *Id.* at 258. Thus, we conclude that the rule we announced in *Douangmala,* providing for an automatic plea withdrawal if the conditions set forth in § 971.08(2) are met, constituted a new rule of criminal procedure.

---

in ignoring the plain language of § 971.08, its attempt to harmonize the statute with § 971.26 was not illogical or unreasonable. This court in *Douangmala* never found the court of appeals' decision in *Chavez* to be "unreasonable."

¶ 29. The dissent argues that the rule we announced in *Douangmala* was not new. Dissent, ¶ 58. The dissent asserts that the rule in *Douangmala* was not new law because when a court "interprets a statute . . . [it] declares what the statute always meant." Dissent, ¶ 94. Under the dissent's approach, the new interpretation provides what the statute meant before and after the decision; the previous interpretation never was the law. Dissent, ¶¶ 94–96. Under this rationale, the holding in *Douangmala* somehow pre-existed its rendering.[18] We decline to engage in this post hoc legal fiction, which is contrary to both *Lo* and *Schmelzer*.

¶ 30. To pretend that *Chavez, Issa, Lopez,* and *Garcia* never existed or applied to any case simply to reach a desired result is disingenuous to the litigants, attorneys, and circuit courts that were bound by those decisions. If the dissent's approach were the law in Wisconsin, then every time this court reinterpreted a procedural statute in the criminal code, every conviction affected by that statute that was finalized before the new interpretation could be collaterally attacked. This result would run counter to *Lo* and *Schmelzer*. The untenable result of the dissent's approach, which flies in the face of the need for finality in judgments, would be

---

[18] *Compare* dissent, ¶ 87 (arguing that *Douangmala* was the law when Lagundoye entered his pleas and was convicted) *with* dissent, ¶ 110 (recognizing that Lagundoye could not challenge his convictions by direct appellate review because the basis of his challenge, the *Douangmala* decision, was announced after the time for his appeal ran out). Conveniently, for the dissent, *Douangmala* was both the law and not the law when Lagundoye was convicted.

that the law at any given point in time would be uncertain and in a constant state of flux.[19]

¶ 31. Given that the rule in *Douangmala* was a new rule of criminal procedure[20] and that Lagundoye's underlying criminal convictions were final before *Douangmala* was decided, Lagundoye's case falls under the *Teague* retroactivity analysis and the *Griffith* rule of retroactivity, applicable only to cases on direct review, does not apply.[21] As discussed *supra,* Wisconsin follows the general rule in *Teague* that a new rule of criminal

---

[19] The dissent's peculiar assertion that we are rewriting the effective date of § 971.08, dissent, ¶ 88, is equally non-meritorious. *Chavez, Issa, Lopez,* and *Garcia* all applied § 971.08; they simply gave the statute a different interpretation than this court did in *Douangmala.* The judiciary's reinterpretation of a statute does not affect the effective date of the statute simply because the previous interpretation was changed.

[20] In an attempt to "have their cake and eat it too," the dissent later argues that the rule in *Douangmala* falls under the second *Teague* exception. Dissent, ¶ 97. However, in order for one of the exceptions to the *Teague* rule of nonretroactivity to apply, the *Teague* rule itself must first be applicable. As noted *supra,* substantive rules and "old" rules do not fall under the *Teague* framework. Thus, by arguing that one of the exceptions to *Teague* applies, the dissent is maintaining two logically inconsistent positions. On the one hand the dissent argues that *Douangmala* was an existing rule of substantive law (not subject to *Teague).* On the other hand, it argues that the second exception to *Teague* applies. However, *Teague* applies only to new rules of criminal procedure. Thus, the dissent is simultaneously arguing that *Douangmala* was an existing rule of substantive criminal law and a new rule of criminal procedure.

[21] *See Teague,* 489 U.S. at 307 (noting " 'the important distinction between direct review and collateral review.' ") (citation omitted).

procedure does not apply retroactively to cases that were final before the date of its issuance. *Schmelzer,* 201 Wis. 2d at 257. In other words, a new rule generally cannot be applied retroactively to cases on collateral review. Thus, under the general rule of nonretroactivity, *Douangmala* would not apply to Lagundoye's case because Lagundoye's convictions all became final before *Douangmala* was decided.

¶ 32. The first exception to the *Teague* nonretroactivity rule applies if the new rule "places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.'" *Teague,* 489 U.S. at 307 (quoting *Mackey v. United States,* 401 U.S. 667, 692 (1971)). This first exception applies to conduct that "is classically substantive." *Howard,* 211 Wis. 2d at 283. *Douangmala* did not decriminalize any conduct or place any conduct beyond the power of the legislature to proscribe. Likewise, the *Douangmala* rule, modifying the test for plea withdrawal under § 971.08(2), does not apply to substantive conduct.[22] Thus, the *Douangmala* rule does not fall within the first exception to *Teague.*

---

[22] *See Lo,* 264 Wis. 2d 1, ¶ 70 (holding the new rule that clarified the burden of the state to disprove mitigating circumstances in prosecution for first-degree intentional homicide did not fall within the first *Teague* exception); *Schmelzer,* 201 Wis. 2d 246, 257–58 (holding that the new rule granting criminal defendants the right to counsel on petitions for habeas corpus review did not "rise to the level of giving protection to a 'primary activity' . . . ."); *State v. Denny,* 163 Wis. 2d 352, 357, 471 N.W.2d 606 (Ct. App. 1991) (holding the new rule that the confrontation clause bars a co-defendant's confession at joint trial where the non-testifying co-defendant's confession is not directly admissible against the defendant did not fall within the first *Teague* exception).

¶ 33. The second *Teague* exception applies if the new rule encompasses procedures that " 'are implicit in the concept of ordered liberty.' " *Teague,* 489 U.S. at 307 (citation omitted). The *Teague* court noted that this second exception is "reserved for watershed rules of criminal procedure." *Id.* at 311. The plurality in *Teague* cited with approval the language used by Justice Harlan in *Mackey,* explaining this second exception:

> "Typically, it should be the case that any conviction free from federal constitutional error at the time it became final, will be found, upon reflection, to have been fundamentally fair and conducted under those procedures essential to the substance of a full hearing. However, in some situations it might be that time and growth in social capacity, as well as judicial perceptions of what we can rightly demand of the adjudicatory process, will properly alter our understanding of the *bedrock procedural elements* that must be found to vitiate the fairness of a particular conviction. For example, such, in my view, is the case with the right to counsel at trial now held a necessary condition precedent to any conviction for a serious crime."

*Id.* at 311–12 (quoting *Mackey,* 401 U.S. at 693–94).

¶ 34. The *Teague* court concluded that the second exception is limited to "those new procedures without which the likelihood of an accurate conviction is seriously diminished." *Id.* at 313. Further, the plurality in *Teague* stated, "[b]ecause we operate from the premise that such procedures would be so central to an accurate determination of innocence or guilt, we believe it unlikely that many such components of basic due process have yet to emerge." *Id.* at 313. Notably, *Teague* ruled that the requirement that a jury venire be composed of a fair cross section of the community would not fall within the second exception because "the absence of a

fair cross section of the jury venire does not undermine the fundamental fairness that must underlie a conviction or seriously diminish the likelihood of obtaining an accurate conviction . . . ." *Id.* at 315. As a further indication of how narrow this exception is, the Supreme Court in *Graham* concluded that the ruling sought by the petitioner, involving a change in the law regarding the mitigation testimony a jury was permitted to hear in a capital murder case, would not fall within the second *Teague* exception, as the ruling would not be part of the "small core" of rules required in the concept of ordered liberty. *Graham,* 506 U.S. at 478.

¶ 35. Wisconsin has consistently followed the *Teague* formulation of the second exception, limiting its application to new constitutional rules that implicate the fairness and accuracy of the fact-finding process. For example, in *State v. Denny,* 163 Wis. 2d 352, 357, 471 N.W.2d 606 (Ct. App. 1991), this court held that a new rule prohibiting the introduction of a non-testifying co-defendant's confession at a joint trial where the co-defendant's statement would not be directly admissible against the defendant qualified for retroactive application under the second *Teague* exception. The court reasoned that because "[t]he confrontation clause of the sixth amendment guarantees the right of the criminal defendant to be confronted with the witness against him[,] . . . [f]ailing to apply a rule interpreting this right would offend our concept of ordered liberty." *Id.*

¶ 36. In contrast, this court has held that a new statutorily based rule, providing a criminal defendant with the right to counsel on petition for habeas corpus, would not be applied retroactively, as it did not invoke "an 'absolute prerequisite to fundamental fairness[.]' " *Schmelzer,* 201 Wis. 2d at 257–58 (citing *Teague,* 489

U.S. at 314). Also, this court has held that a new rule clarifying the statutory elements for imperfect self-defense did not merit retroactive application, as it did not constitute "a watershed rule of criminal procedure, implicating fundamental fairness and the concept of ordered liberty." *Lo,* 264 Wis. 2d 1, ¶ 71.

¶ 37. We do not think the *Douangmala* rule falls within the small core of procedural rules meriting retroactive application under the second exception. The rule in *Douangmala,* providing for an automatic plea withdrawal if a defendant meets the requirements of § 971.08(2), does not constitute "a watershed rule of criminal procedure, implicating fundamental fairness and the concept of ordered liberty." *Lo,* 264 Wis. 2d 1, ¶ 71. *Douangmala* altered the standard for granting relief when a circuit court violates the dictates of a procedural statute. Prescribing for an automatic vacatur if the requirements of § 971.08(2) are met, instead of a harmless-error analysis, certainly does not affect the integrity or accuracy of the fact-finding process.

¶ 38. Further, the *Douangmala* rule does not implicate a constitutional right that is included in the foundation of bedrock procedural elements considered necessary for a fair trial. The holding in *Douangmala* was based solely upon the legislative history of § 971.08(2). *Douangmala,* 253 Wis. 2d 173, ¶¶ 26–30. The one case in which a Wisconsin court found a new rule to apply retroactively to a case on collateral review under the second *Teague* exception involved a new rule based on a constitutional right. *Denny,* 163 Wis. 2d at 357. The court in both *Schmelzer* and *Lo* considered new rules based solely on existing statutes and concluded the new rule in each respective case did not warrant retroactive application. Significantly, *Schmelzer* involved the right to counsel and *Lo* involved

105

the elements for mitigation of a crime. If these new rules did not constitute watershed rules of criminal procedure implicating fundamental principles of ordered liberty, then repudiation of the harmless-error analysis in *Douangmala* can hardly be considered such a rule.

¶ 39. Contrary to the dissent's assertion, the fact that the result of not applying a new rule retroactively may result in unpleasant consequences to a particular litigant, dissent, ¶¶ 97, 104–109, does not render the *Douangmala* rule part of the small core of watershed rules essential in the concept of ordered liberty. As noted *supra,* this second *Teague* exception is limited to new procedural rules that affect the likelihood of an accurate conviction. Thus, "unless a new rule of criminal procedure is of such a nature that 'without [it] the likelihood of an accurate conviction is seriously diminished,' there is no reason to apply the rule retroactively." *Bousley,* 523 U.S. at 620 (quoting *Teague,* 489 U.S. at 313).

¶ 40. It is important to emphasize that under the previous harmless-error analysis of *Chavez* and its progeny, the failure of a circuit court to inform a defendant under § 971.08(1)(c) that he may be subject to deportation by pleading guilty constituted harmless error if the defendant nonetheless actually knew that he could be deported. *Chavez,* 175 Wis. 2d at 368. Thus, *Douangmala* essentially ruled that a defendant is entitled to a plea withdrawal if he meets the requirements of § 971.08(2), even if he already knew that he could be subject to deportation proceedings by pleading guilty. The rule in *Douangmala,* therefore, did not affect the accuracy or integrity of the fact-finding process. The fact that deportation is a harsh consequence for

106

Lagundoye's criminal offenses has no bearing as to whether the second *Teague* exception applies.

¶ 41. The rule in *Douangmala* did not implicate a constitutional right, the accuracy or fundamental fairness of a trial, or change our understanding of the bedrock procedural elements inherent in the concept of ordered liberty. Thus, the new rule announced in *Douangmala* does not fall within the second *Teague* exception. *Douangmala* does not fit within either of the two *Teague* exceptions to nonretroactivity; hence, it cannot be applied retroactively to cases that were not on direct review when *Douangmala* was decided. Therefore, we hold that *Douangmala* does not apply retroactively to cases, such as Lagundoye's, that were final before *Douangmala* was decided and are now on collateral review.[23] In the end, the dissent's smokescreen of pejoratives and results-oriented rationale cannot obscure the reality that our decision is perfectly consistent with those Wisconsin authorities that have interpreted whether a rule is "old" or "new" and whether a rule is "procedural" or "substantive" for the purposes of retroactivity.

---

[23] As *Douangmala* was not the governing law when Lagundoye entered his guilty pleas and was convicted, the dissent's argument that this court is violating his right to due process is unpersuasive. Dissent, ¶ 87 & n.38. *Fiore v. White*, 531 U.S. 225, 228 (2001), is inapplicable here because, unlike the statutory interpretation at issue in *Fiore*, we conclude that the interpretation of Wis. Stat. § 971.08 rendered in *Douangmala* constituted a new rule of criminal procedure. As *Douangmala* was not the law when Lagundoye was convicted, there is no due process violation. *See Fiore*, 531 U.S. at 228–229. "In any event . . . a state is not constitutionally compelled to make retroactive its new construction of a statute." *Lo*, 264 Wis. 2d 1, ¶ 74.

■■ ■■

¶ 42. As *Douangmala* does not apply to Lagundoye, his case is governed by the law as it existed when his convictions became final. Thus, the *Chavez* harmless-error analysis applies to Lagundoye's case. Under *Chavez,* a circuit court's failure to advise a defendant, pursuant to § 971.08(1)(c), of the possible deportation consequences of his guilty plea constitutes harmless error if the defendant was aware of the potential for deportation when he entered his plea. *Chavez,* 175 Wis. 2d at 368.

¶ 43. As the court of appeals noted, Lagundoye does not contend that he was unaware of the deportation consequences of his guilty pleas when he entered into them. *Lagundoye,* 260 Wis. 2d 805, ¶ 11. Further, it is clear from the record that Lagundoye did know of the possible deportation consequences of his guilty pleas. Lagundoye's September 1996 conviction for theft, which has not been appealed to this court, Case No. 96–CM–610289, was chronologically his first conviction. As noted *supra,* Lagundoye initially sought to withdraw his plea in this case as well, but later dropped this appeal, after it was determined that the circuit court did comply with § 971.08(1)(c) and orally informed him of the deportation consequences of his plea. Thus, because Lagundoye has not alleged that he was unaware of the deportation consequences of his pleas when he entered into them, the circuit courts' failure to advise him of those consequences as mandated by § 971.08(1)(c) constitutes harmless error. Therefore, Lagundoye is not entitled to relief.

## IV. SUMMARY

¶ 44. We conclude the automatic vacatur rule announced in *Douangmala* is a new rule of criminal

procedure. We hold that *Douangmala* may not be applied retroactively to cases that were final before *Douangmala* was decided because the rule in *Douangmala* does not fit within either of the two exceptions to the *Teague* doctrine. *Douangmala*, therefore, does not apply to Lagundoye because all of Lagundoye's cases were final before *Douangmala* was decided. Finally, we hold that Lagundoye is not entitled to relief under the law as it existed when his cases became final because Lagundoye has not alleged that he was unaware of the deportation consequences of his pleas, and thus the circuit courts' failure to advise him of the deportation consequences of his plea pursuant to § 971.08(1)(c) constitutes harmless error.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 45. DIANE S. SYKES, J., did not participate.

¶ 46. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). The majority in this case is in the uniquely unenviable position of rendering a decision that is wrong on the law as well as being fundamentally unfair and unjust. Because neither the law nor fundamental fairness and justice can support the majority opinion's conclusions, I dissent.

¶ 47. The majority opinion frames the legal issue as follows: whether the rule announced in *State v. Douangmala*, 2002 WI 62, 253 Wis. 2d 173, 646 N.W.2d 1, can be applied retroactively to a defendant whose opportunity for a direct appeal expired before *Douangmala* was decided.[1] This court did not decide in *Douangmala* whether its decision was to be retroac-

---

[1] Majority op., ¶ 2.

tively applied to an individual such as Lagundoye who raised the issue in a collateral post-conviction proceeding.

¶ 48. Although this court is not required to follow federal rules regarding the retroactive application of changes in the criminal law, this court has, in the past, relied on federal interpretations in this area and has explicitly adopted three United States Supreme Court cases elaborating upon various aspects of the doctrine of retroactivity: *Bousley v. United States,* 523 U.S. 614 (1998), *Teague v. Lane,* 489 U.S. 288 (1989), and *Griffith v. United States,* 479 U.S. 314 (1987).

¶ 49. Following the federal rules of retroactivity is not easy. One commentator has noted that "the Court's decisions in this area have spawned a veritable cottage industry of academic attempts to impose some order on the chaos."[2] Another concluded that the Court's jurisprudence in this area seems to be the product of a split personality.[3]

¶ 50. Retroactivity under these cases turns on whether a court announces a new or an old rule, whether the new rule is one of substantive criminal law or criminal procedural law, and whether the defendant's challenge is made on direct appeal (or while in the direct appeal pipeline) or on collateral review.[4] New rules of substantive criminal law are presumptively

---

[2] Trevor W. Morrison, *Fair Warning and the Retroactive Judicial Expansion of Federal Criminal Statutes,* 74 S. Cal. L. Rev. 455, 466 (2001).

[3] Linda Meyer, *"Nothing We Say Matters": Teague and New Rules,* 61 U. Chi. L. Rev. 423, 459 (1994). *See also* Barry Friedman, *Failed Enterprise,* 83 Cal. L. Rev. 485, 524–25 (1995) (describing *Teague* as a nearly impenetrable disaster).

[4] Majority op., ¶¶ 11–13.

retroactive;[5] new rules of criminal procedure are generally not retroactive to cases that became final before the new rule was announced.[6] This case is a review of a collateral post-conviction proceeding. The majority opinion concludes that the present case involves a new rule of criminal procedure.

¶ 51. The lines between a "new rule" and an "old rule,"[7] and between a substantive and a procedural change in the law,[8] are blurry and often difficult to perceive. But blurriness is no excuse for myopia. The majority opinion's failure to come to grips with the difficult, nuanced issues presented by this case is vexing, and I cannot agree with its short-sighted conclusions.

¶ 52. I agree with the majority opinion that this case is governed by the United States Supreme Court's decisions in *Teague* and *Bousley*. I conclude, however, that Lagundoye's conviction must be vacated for the following reasons:

¶ 53. First, the rule announced in *Douangmala* is not a new rule under the *Bousley* decision.

---

[5] Majority op., ¶ 12.

[6] *Teague v. Lane,* 489 U.S. 288, 301 (1989); majority op., ¶ 13.

[7] The United States Supreme Court has fully acknowledged that "[i]t is admittedly difficult to determine when a case announces a new rule for retroactivity purposes." *Teague v. Lane,* 489 U.S. 288, 301 (1989). The Court has sought to provide some guidance in this area, but its guidance on what constitutes a new rule has often proved more opaque than clarifying.

[8] *See, e.g., Hanna v. Plumer,* 380 U.S. 460, 471 (1965) ("The line between 'substance' and 'procedure' shifts as the legal context changes. 'Each implies different variables depending upon the particular problem for which it is used.' ").

¶ 54. Second, *Douangmala* did not announce, under *Teague,* a new rule even though it overruled prior court of appeals decisions.

¶ 55. Third, *Douangmala* announced, under *Teague,* a substantive rule, not a procedural rule.

¶ 56. Fourth, the majority determines the effective date of a statute instead of abiding by the legislative determination of the effective date of Wis. Stat. § 971.08.

¶ 57. Fifth, even if *Douangmala* is viewed as having announced a new procedural rule, this case falls under the *Teague* exception that allows retroactive application of a " 'small core' of rules required in the concept of ordered liberty."[9] This case implicates significant concerns of liberty and fairness.

## I

¶ 58. First, the rule announced in *Douangmala* is not a new rule under the *Bousley* decision.

¶ 59. This case is very similar to *Bousley.* Both *Bousley* and the present case involve whether a plea was knowingly and intelligently made. The Court concluded in *Bousley* that the requirement that a plea be knowing and intelligent is an old rule and therefore even a new rule governing what constitutes a knowing and intelligent plea is applied retroactively. *Bousley* governs this case.

¶ 60. In *Bousley,* the petitioner pled guilty to the charge of "knowingly and intentionally us[ing] firearms during and in relation to a drug trafficking crime."[10] The petitioner's guilty plea was accepted, and he was

---

[9] Majority op., ¶ 34.
[10] *Bousley v. United States,* 523 U.S. 614, 616 (1998).

sentenced. The petitioner appealed, challenging the sentence, not the guilty plea.

¶ 61. After the appeal was final, the petitioner sought a writ of habeas corpus, "challenging the factual basis for his guilty plea on the ground that neither the 'evidence' nor the 'plea allocution' showed a 'connection between the firearms in the bedroom of the house, and the garage, where the drug trafficking occurred.' "[11] The district court dismissed the petitioner's habeas petition, and the petitioner appealed.

¶ 62. While the petitioner's appeal was pending, the United States Supreme Court decided *Bailey v. United States,* 516 U.S. 137 (1995), which held that "active employment of [a] firearm" required a use such as "brandishing, displaying, bartering, striking with, . . . [or] firing or attempting to fire the weapon."[12]

¶ 63. The Eighth Circuit affirmed the district court's dismissal of the habeas petition on the ground that the petitioner had waived any challenges to his guilty plea or conviction by failing to raise these challenges in his direct appeal. The United States Supreme Court granted review to resolve a circuit split over the "permissibility of post-*Bailey* collateral attacks on convictions under the use of firearms in drug trafficking statute where the conviction was obtained pursuant to a guilty plea."[13]

¶ 64. At the United States Supreme Court, the petitioner contended that "neither he, nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged."[14]

[11] *Id.* at 617.

[12] *Bailey v. United States,* 516 U.S. 137, 144 (1995).

[13] *Bousley,* 523 U.S. at 618.

[14] *Id.*

Petitioner therefore argued that he was not correctly informed "as to the true nature of the charge against him."[15]

¶ 65. The United States Supreme Court ruled that the underlying *constitutional claim* Bousley made (although based on the new *Bailey* case) was that the petitioner's guilty plea was not "knowing and intelligent."[16] The Court concluded that "nothing was new about this principle."[17]

¶ 66. *Bousley* emphasized that the critically important factor was not the change in the substantive law made in *Bailey,* but rather how the change in the substantive law affected the knowing and intelligent entry of a guilty plea.

¶ 67. For entry of a guilty plea to be knowing and intelligent, a defendant must "understand[] . . . the nature of the charge and the consequences of his plea."[18] The reason for this requirement is that a guilty plea "cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts."[19] In *Bousley,* the Court concluded that the petitioner may collaterally attack the entry of a guilty plea without running afoul of *Teague.*[20]

---

[15] *Id.*

[16] *Id.* at 620.

[17] *Id.* (citing *Smith v. O'Grady,* 312 U.S. 329 (1941), for the proposition that pleas must be entered knowingly and intelligently).

[18] *McCarthy v. United States,* 394 U.S. 459, 467 (1969). *See also United States v. Ruiz,* 536 U.S. 622, 629 (2002); *Boykin v. Alabama,* 395 U.S. 238, 242 (1969).

[19] *McCarthy,* 394 U.S. at 466.

[20] The Court in *Bousley* went on to explain that although the claim was not barred by *Teague,* the petitioner faced an

¶ 68. The United States Supreme Court ultimately concluded in *Bousley*, however, that the petitioner waived the argument that his plea was not "knowing and intelligent" when he failed to raise it on direct appeal.

¶ 69. In this case, unlike in *Bousley*, waiver is not an issue. The Wisconsin legislature has conclusively determined that the failure to advise an accused of potential deportation justifies vacating the conviction. The statute "does not limit the ability to withdraw a plea of guilty or no contest on any other grounds" than those stated in the statute.[21] Langudoye has met all the statutory conditions. The *Douangmala* court concluded that the Wisconsin legislature intended that if the statutory conditions are met (as they are in the present case), the circuit court *shall* vacate the judgment.[22] The legislature has, in effect, declared that when an accused enters a guilty plea without having received the admo-

---

uphill battle because "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Bousley*, 523 U.S. at 621 (citing *Mabry v. Johnson*, 467 U.S. 504, 508 (1984)). Furthermore, the Court noted that the petitioner would have to show that the voluntariness and intelligence of the guilty plea was first challenged on direct review. *Id.*

[21] *State v. Douangmala*, 2002 WI 62, ¶ 24, 253 Wis. 2d 173, 646 N.W.2d 1.

[22] *See* Wis. Stat. § 971.08(d):

If a court fails to advise a defendant as required by sub. (1)(c) and a defendant later shows that the plea is likely to result in the defendant's deportation, exclusion from admission to this country or denial of naturalization, the court on the defendant's motion shall vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea. This subsection does not limit the ability to withdraw a plea of guilty or no contest on any other grounds.

nition about deportation from the circuit court, the guilty plea is invalid and must be vacated. The legislature declared that a plea entered without the admonition is not knowingly and intelligently made. The harmless error rule does not apply. Neither does the waiver rule. The legislature has explicitly provided a different rule from the ones usually applicable when determining whether a plea was made knowingly and intelligently.

¶ 70. For these reasons, I conclude that *Douangmala* involves the old notion that a guilty plea must be knowingly and intelligently made. The legislature has set forth a special rule that if an admonition about deportation is not given, the guilty plea is not knowingly and intelligently made and the conviction must be vacated. Such a decision is, according to *Bousley,* retroactive.

## II

¶ 71. Second, *Douangmala* did not announce a new rule even though it overruled prior court of appeals decisions. Under *Teague,* a federal court will not disturb a final state conviction "unless it can be said that a state court, at the time the conviction or sentence became final, would have acted objectively unreasonably by not extending the relief later sought in federal court."[23]

¶ 72. A unanimous court in *Douangmala* concluded that the earlier court of appeals cases interpreting the statute were "objectively wrong under the

---

[23] *O'Dell v. Netherland,* 521 U.S. 151, 156 (1997). *See Butler v. McKellar,* 494 U.S. 407, 414 (1990) ("The 'new rule' principle therefore validates reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions.").

language of the statute."[24] Thus *Douangmala* did not announce a new rule under *Teague*.[25]

¶ 73. According to the majority opinion, "a case announces a new rule if its outcome was susceptible to debate among reasonable minds."[26] It concludes that the court of appeals' harmless error analysis in cases prior to *Douangmala* was susceptible to debate among reasonable minds. Not so, said the court in *Douangmala*.

¶ 74. When the *Douangmala* court declared the court of appeals' prior interpretations to be "objectively wrong," it was saying that no reasonable court would conclude that the statute meant something else.

¶ 75. As this court has explained, we do not examine the reasonableness of the mind of the person or the court making the interpretation, but rather, we look

---

[24] *Douangmala,* 253 Wis. 2d 173, ¶ 42.

[25] This court may, regardless of *Teague,* judicially decide for itself whether an interpretation of a statute is a correct statement of the law as of the date of conviction or whether the interpretation of the statute creates new law. See *Fiore v. White,* 531 U.S. 225, 228 (2001), in which the United States Supreme Court asked a state supreme court to determine whether its statutory interpretation stated the correct interpretation of the disputed statute on the date the conviction became final. *See also Great N. Ry. v. Sunburst Oil & Ref. Co.,* 287 U.S. 358, 365 (1932) (A "state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. . . . The alternative is the same whether the subject of the new decision is common law or statute.").

[26] Majority op., ¶ 26 (quoting *State v. Horton,* 195 Wis. 2d 280, 291, 536 N.W.2d 155 (Ct. App. 1995) (quoting *Teague,* 489 U.S. at 301)).

at the reasonableness of the interpretation itself.[27] Thus, according to the case law, reasonable people, the objective test, can reach unreasonable interpretations. When an interpretation adds words to the explicit language of a statute, such as adding the concept of harmless error to a statute that contains no such concept, it is, as this court has stated, "not a case of conflicting, reasonable 'plain meaning' interpretations; it is a case of lower court error."[28]

¶ 76. *Douangmala* was not a case in which the "outcome was susceptible to debate among reasonable minds."[29] *Douangmala* was not a case in which this court declared that the language of the statute supported multiple reasonable interpretations.[30] All of the members of this court agreed in *Douangmala* that the text of the statute prescribed both the warning to be given about possible deportation and the remedy for a circuit court's failure to give the warning. *Douangmala* is a decision in which this court held that the court of appeals reached what this court viewed as an unreasonable interpretation, "a case of lower court error."[31]

¶ 77. In *Douangmala,* we unhesitatingly concluded that "[t]he precise words of § 971.08(2) lead inexorably to one conclusion . . . : the circuit court

---

[27] *Bruno v. Milwaukee County,* 2003 WI 28, ¶ 22, 260 Wis. 2d 633, 660 N.W.2d 656.

[28] *Bruno,* 260 Wis. 2d 633, ¶ 23.

[29] *Holland v. McGinnis,* 963 F.2d 1044, 1053 (7th Cir. 1992) (citing *Butler v. McKellar,* 494 U.S. at 415).

[30] *Douangmala* thus contrasts with *Schmelzer,* 201 Wis. 2d 246, in which the court had to interpret two statutes and draw reasonable inferences from them in order to reach the conclusion it did.

[31] *Bruno,* 260 Wis. 2d 663, ¶ 23.

118

must permit the defendant to withdraw his plea."[32] Our ruling in *Douangmala* "merely clarified the plain language of the statute."[33] It didn't change the law. *Douangmala* finally and conclusively declared what Wis. Stat. § 971.08 has always meant since its enactment in 1986 because its interpretation of the statute was the only reasonable one.

¶ 78. Yet, the majority opinion persists in asserting that merely because the court of appeals' decisions in *State v. Chavez*, 175 Wis. 2d 366, 498 N.W.2d 887 (Ct. App. 1993); *State v. Issa*, 186 Wis. 2d 199, 519 N.W.2d 741 (Ct. App. 1994); *State v. Lopez*, 196 Wis. 2d 725, 539 N.W.2d 700 (Ct. App. 1995); and *State v. Garcia*, 2000 WI App 81, 234 Wis. 2d 304, 610 N.W.2d 180 were overruled by *Douangmala* does not mean that those interpretations were unreasonable.[34] The only way the majority opinion can come to this conclusion is to declare that an objective reading of a statute now includes unreasonable interpretations as well as reasonable ones.

¶ 79. If this court were following federal law, as it very frequently does, and if this court were following *Teague* and *Bousley*, as it professes to do, it should conclude that *Douangmala* was merely an objectively correct reading of the language of an existing statute

---

[32] *Douangmala*, 253 Wis. 2d 173, ¶ 25.

[33] *Fiore v. White*, 757 A.2d 842, 848–49 (Pa. 2000).

[34] Majority op., ¶ 26, n.17. The majority opinion also argues that statutes relating to the same subject matter should be harmonized when possible. Although § 971.08 and § 971.26 reside in the same chapter, they can not be properly characterized as relating to the same subject matter when § 971.08 fully sets forth the conditions under which a conviction is vacated and when the court determined that inclusion of the harmless error analysis was objectively wrong.

and therefore not a new rule. I conclude that *Douangmala* did not announce a new rule, and it should therefore apply retroactively.

### III

¶ 80. Third, even if *Douangmala* announced a new rule, the rule is not procedural but substantive.

¶ 81. *Douangmala* is not, as the majority opinion claims, new procedural law. Rather, it is old substantive criminal law.[35]

¶ 82. I acknowledge that if one reads the statute superficially, it appears to be procedural. Section 971.08(1)(c), governing the admonition about deportation, has the surface feel of a procedural statute because it addresses, at least in part, the procedure for taking a guilty plea.

¶ 83. Rules do not, however, "fall neatly under either the substantive or procedural doctrine category."[36] They may partake of attributes of both.

¶ 84. The statute and the *Douangmala* case do more than govern the procedure for taking a guilty plea. *Douangmala* declared that a conviction based on a guilty plea made without a circuit court's admonition

---

[35] For a discussion of substantive law, see *State v. Lo,* 2003 WI 107, 264 Wis. 2d 1, 665 N.W.2d 756 (Abrahamson, C.J., dissenting), in which I argued in dissent that the change in the law made in *State v. Howard,* 211 Wis. 2d 269, 564 N.W.2d 753 (1997), which the defendant sought to apply retroactively in *Lo,* was a substantive rather than a procedural change. I argued that as such, the change should have applied retroactively because it did not fall within the scope of *Teague. Lo,* 264 Wis. 2d 1, ¶ 113.

[36] *United States v. Woods,* 986 F.2d 669, 677–78 (3d Cir. 1993).

about deportation must, as a matter of law, be vacated. *Douangmala* thus affects the scope and application of all criminal statutes because it challenges the validity of all guilty pleas and, for purposes of *Teague,* has a substantive impact.

¶ 85. Wisconsin Stat. § 971.08 sets forth the procedure for a circuit court to warn a defendant about deportation but makes the warning a substantive right by vacating a conviction when a circuit court fails to give the warning. In adopting the procedure outlined in § 971.08, the legislature statutorily determined the substantive consequence of a circuit court's failure to adhere to the statute.

¶ 86. Under *Bousley,* a court holding is "substantive" when it affects the scope and application of a substantive criminal statute.[37] In *Bousley* the Court ruled that the *Bailey* decision affected the scope and application of a substantive criminal statute. So, too, does *Douangmala* affect the scope and application of substantive criminal statutes. Accordingly, I conclude that the rule in *Douangmala* is substantive and should be applied retroactively.

¶ 87. Furthermore, because Wis. Stat. § 971.08 and *Douangmala* were, objectively, the law when Lagundoye entered his pleas and was convicted, the majority's failure to provide the remedy established by the legislature and requested by Lagundoye has, in my opinion, deprived Lagundoye of the substantive right to knowingly and intelligently enter a plea and interfered with his statutorily created right to have his conviction vacated. I conclude that validating a conviction explic-

---

[37] *Bousley,* 523 U.S. at 620.

itly required to be vacated by state statute might very well violate the due process clause of the Fourteenth Amendment.[38]

## IV

¶ 88. Fourth, the majority has determined the effective date of a statute instead of abiding by the legislative determination of the effective date.

¶ 89. In the present case, in which the prior interpretation of a statute was "objectively wrong," the majority opinion effectively ignores the legislature's prerogative to determine when a statute goes into effect. Section 971.08 went into effect on April 24, 1986, and it has remained unchanged ever since, even though this court did not definitively declare what it objectively meant until 2002.

¶ 90. Lagundoye's crimes, pleas, and convictions all occurred after the effective date of the statute. Section 971.08 was, according to the legislature, in

---

[38] *Compare Fiore v. White,* 531 U.S. 225, 228 (2001), a unanimous per curiam opinion, in which the Court held that the Pennsylvania Supreme Court's failure to overturn the conviction of a defendant, when the proper interpretation of the statute existing at the time the defendant was convicted did not support his conviction, violated the Due Process Clause of the Fourteenth Amendment.

*See also State v. Hazen,* 198 Wis. 2d 554, 559, 543 N.W.2d 503 (Ct. App. 1995) ("The due process clause protects interests in life, liberty, and property, and state laws can create additional interests protected by the due process clause.") (citing *Ky. Dept. of Corrs. v. Thompson,* 490 U.S. 454, 460 (1989)).

The precise mechanism by which state laws create liberty interests protected by the due process clause is not clear. *See Kirsch v. Endicott,* 201 Wis. 2d 705, 715, 549 N.W.2d 761 (Ct. App. 1996).

effect when three circuit court judges failed to inform Lagundoye personally that he was subject to deportation. When the majority opinion declares *Douangmala* to be a new rule effective after the opinion was announced, it rewrites the effective date of the statute, contrary to the directive of the legislature, and exceeds the authority of this court.

¶ 91. The court commented in *Bousley* that *Teague* is inapplicable to criminal statutes. The court stated that "because *Teague* by its terms applies only to procedural rules, we think it is inapplicable to the situation in which this Court decides the meaning of a criminal statute enacted by Congress."[39]

¶ 92. The *Bousley* Court did not further explain what it meant when it declared that *Teague* did not apply to criminal statutes. The Court may have meant that all criminal statutes, including criminal procedural statutes, enacted by the legislature are not subject to *Teague* because that doctrine only applies to court-made rules of constitutional procedure.[40] Alternatively, it may have meant that *Teague* does not apply to substantive criminal statutes.[41]

---

[39] *Bousley*, 523 U.S. at 620.

[40] At least one court, prior to *Bousley*, concluded that this justification makes little sense as statutes are of less importance than the Constitution. *Hrubec v. United States*, 734 F. Supp. 60 (E.D.N.Y. 1990).

[41] Subsequent decisions in the federal courts have not clarified this issue. Cases citing *Bousley* have arisen when the Court's interpretation of a criminal statute resulted in a substantive change in the law. *See, e.g., United States v. Lopez*, 248 F.3d 427, 432 (5th Cir. 2001) ("*Teague* is inapplicable, because *Richardson* consisted of the Supreme Court's interpretation of a statute and is therefore retroactively available on collateral review."); *Lanier v. United States*, 220 F.3d 833, 838 (7th Cir.

¶ 93. Justice Stevens' concurrence in *Bousley* provides a more nuanced explanation as to why *Teague* does not apply to criminal statutes. In his concurrence, Justice Stevens expressed the view that *Bousley* did not raise any *Teague* retroactivity issues because "*Bailey* . . . did not change the law. It merely explained what [the statute] had meant since [it] was enacted. The fact that a number of Courts of Appeals had construed the statute differently is of no . . . legal significance . . . ."[42]

¶ 94. Justice Stevens' concurrence in *Bousley* was consistent with a line of cases, both criminal and civil, that state the rule that when the United States Supreme Court interprets a statute, the decision ordinarily applies retroactively because the Court declares what the statute always meant.

¶ 95. The United States Supreme Court's construction of a federal statute "is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construc-

2000) ("*Teague* is inapt here where we interpret a criminal statute."); *Glover v. Hargett,* 56 F.3d 682, 685 n.4 (5th Cir. 1995) ("[B]ecause *Teague* concerned the retroactive application of court-made rules of criminal procedure, not state statutes" retroactivity analysis does not apply); *United States v. Guardino,* 972 F.2d 682, 687 n.7 (6th Cir. 1992) ("*Teague* prohibited the retroactive application of a new constitutional rule of criminal procedure to an existing conviction. *Teague* does not bar the retroactive application of *Hughey* because, unlike *Teague, Hughey* did not announce a new constitutional rule, but merely interpreted a statute . . . ").

This court has, however, applied *Teague* to statutory interpretation. *See State ex rel. Schmelzer v. Murphy,* 201 Wis. 2d 246, 255, 548 N.W.2d 45 (1996).

[42] *Bousley,* 523 U.S. at 625 (Stevens, J., concurring).

tion."[43] Under this theory, when the Court interprets the meaning of a statute, it "explain[s] its understanding of what the statute has meant continuously since the date when it became law. In statutory cases, the Court has no authority to depart from the congressional command setting the effective date of a law that it has enacted."[44]

¶ 96. If this court were following *Teague* and *Bousley*, as it professes to do, I suggest that it should not trump the legislature's authority to decide when a statute becomes effective and should conclude that *Douangmala* is the authoritative statement of what the statute meant since the effective date of the law set by the legislature. For these reasons, I conclude that *Douangmala* is retroactive.

---

[43] *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312–13 (1994).

[44] *Rivers*, 511 U.S. at 313 n.12. *See also United States v. Gonzales*, 332 F.3d 825, 826 (5th Cir. 2003) ("A statement of what the law is and always was cannot be a new constitutional rule of criminal procedure."); *United States v. City of Tacoma, Washington*, 332 F.3d 574, 580 (9th Cir. 2003) (Interpretation of a statute "cannot be considered a 'change' of operative law. The theory of a judicial interpretation of a statute is that the interpretation gives the meaning of the statute from its inception, and does not merely give an interpretation to be used from the date of decision."); *Dixon v. Dormire*, 263 F.3d 774, 781 (8th Cir. 2001) ("Where, as here, there has been no change in the law, we must give effect to the Supreme Court's enunciation of what the statute has always meant, even though our circuit precedent may have been otherwise when this dispute arose.") (internal citations omitted). *See also Agee v. Russell*, 751 N.E.2d 1043, 1047 (Ohio 2001) (decision overturning a lower court's statutory interpretation is retroactive in its operation; the former decision never was the law).

## V

¶ 97. Fifth, even if *Douangmala* is viewed as having announced a new procedural rule, this case falls under the *Teague* exception that allows retroactive application of a " 'small core' of rules required in the concept of ordered liberty."[45]

¶ 98. Under the *Teague* exception, a new rule must seriously enhance the accuracy of the proceedings and alter our understanding of bedrock procedural elements essential to the fairness of the proceeding.[46] A

---

[45] *Teague,* 489 U.S. at 307.

The notion of ordered liberty is a concept designed to limit the arbitrariness of government action. One scholar has classified the elements of fair process under ordered liberty as being twofold: the requirement of rule-obedience and the requirement of minimum procedures. Edward Rubin, *Due Process and the Administrative State,* 72 Cal. L. Rev. 1044, 1105 (1984). Rule-obedience requires that "government decisionmakers must follow preestablished rules in adjudicative processes." The minimum procedure principle argues that "certain minimum adjudicatory procedures must be followed in various situations."

Arguably, the majority opinion does not satisfy these strands of due process required to ensure the notion of ordered liberty. The legislature set forth in § 971.08 the minimum procedures required to be performed by an adjudicative body in order to ensure that a defendant facing deportation is fully and personally informed of the consequences of pleading guilty. By failing to apply the rule in *Douangmala* to Lagundoye, the majority opinion violates both the minimum procedures the legislature has provided to protect defendants facing deportation and the rule that this court itself adopted in *Douangmala.*

[46] *Tyler v. Cain,* 533 U.S. 656, 665 (2001) ("To fall within this exception, a new rule must meet two requirements: Infringement of the rule must 'seriously diminish the likelihood of obtaining an accurate conviction," and the rule must ' "alter our understanding of the bedrock procedural elements" ' essential

126

guilty plea based on information required by the legislature to be imparted to a defendant enhances the accuracy of the proceedings. That's why the legislature adopted the statute. It wanted a defendant facing deportation to be informed of the consequences of a guilty plea.

¶ 99. Wisconsin Stat. § 971.08 and the *Douangmala* decision alter our understanding of bedrock procedural elements essential to the fairness of the proceedings because at issue is the statutorily mandated legal principle that a guilty plea must be knowingly and intelligently made and cannot be knowing or intelligent if the circuit court does not admonish the defendant about possible deportation consequences flowing from his plea.

¶ 100. In other words, this court should be examining "whether the claimed error of law was a 'fundamental defect which inherently results in a complete miscarriage of justice' and whether '[i]t presen[s] exceptional circumstances where the need for the remedy afforded' in a collateral proceeding" is evident.[47]

¶ 101. This case implicates significant concerns of liberty and fairness. Deportation may result in the loss of "all that makes life worth living."[48] The United States Supreme Court clearly and persuasively articulated the significant interests involved in deportation in *Bridges v. Wixon* as follows:

---

to the fairness of a proceeding.") (citations omitted); *Sawyer v. Smith*, 497 U.S. 227, 242 (1990); *Teague*, 489 U.S. at 311; *Mackey v. United States*, 401 U.S. 667, 693 (1971).

[47] *Davis v. United States*, 417 U.S. 333, 346 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

[48] *Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922).

> Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. That deportation is a penalty—at times a most serious one—cannot be doubted. Meticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness.[49]

¶ 102. The legislature of this state has explicitly decided in Wis. Stat. § 971.08 that a defendant facing deportation deserves to be expressly and explicitly informed on the record each time he or she enters a guilty plea that may actually result in deportation. Our state legislature understands the seriousness of deportation. To ensure absolute fairness, an individual facing deportation must personally be reminded by a circuit court of this serious consequence so that he or she can carefully consider the consequences before entering a guilty plea.

¶ 103. A comment in the drafting record of § 971.08 describes similar statutes in other states "as going a long way to alleviate the hardship and unfairness when an alien unwittingly pleads guilty to a charge without being informed of the immigration consequences of a plea."[50] Our legislature went further than these other state legislatures to alleviate that hardship and unfairness by ensuring that whether or not an alien enters a plea unwittingly, a court must allow the alien to withdraw his plea if he or she was not personally

---

[49] *Bridges v. Wixon,* 326 U.S. 135, 154 (1945). *See also Rose v. H.L. Woolwine,* 344 F.2d 993, 995 (4th Cir. 1965); *Handlovits v. Adcock,* 80 F. Supp. 425, 427 (1948).

[50] *See Douangmala,* 253 Wis. 2d 173, ¶ 28.

informed about possible deportation.[51] That an accused is aware of the deportation consequences of a plea at the time he or she entered the plea is irrelevant.[52] Today the majority opinion breaks the legislature's commitment to that noble goal.

¶ 104. Lagundoye came to the United States from Nigeria as a nine-year-old in 1984, about 20 years ago, with his mother, younger brother, and sister. He attended public elementary and high school in Milwaukee. He enrolled in college at the University of Wisconsin-Milwaukee. In short, Lagundoye spent most of his life in the United States. Lagundoye's mother, father, two sisters, and brother are all U.S. citizens.

¶ 105. Lagundoye was 21 years old when he committed the first crime for which he was convicted and was 22 or 23 years old when he committed his last crime. He was deported when he was 27 years old.

¶ 106. Lagundoye was convicted of five crimes. The crimes are classified as property crimes, not crimes against life and bodily security: two counts of misdemeanor theft (involving his employer's business), burglary (entering a building with intent to steal), and two counts of forgery (taking credit card slips from his employer and forging them). He was sentenced to prison on the forgery count in 1998, and, while completing his sentence, he was deported in 2002.

¶ 107. Lagundoye's criminal behavior was and is deplorable and inexcusable. With all the opportunities afforded him, by the age of 23 he was a criminal, five times over. He had been in the House of Corrections, on

---

[51] *See id.,* ¶ 31.
[52] *Id.,* ¶¶ 3, 4, 17, 46.

probation, and in prison. Although he was still relatively young, he was not a promising prospect to live a productive life in society.

¶ 108. The State deprived him of liberty for more than 8 years by imprisoning him but left him with the opportunity to return to his home in Milwaukee to try to make a fresh start at the end of his prison term. The federal government banished Lagundoye to Nigeria, isolated from his family, friends, and the American culture in which he grew up. The federal government deprived him of any hope or opportunity to return to his family or this country.

¶ 109. The question before us is whether Lagundoye deserves to be punished by banishment when, after his first conviction, three circuit courts failed to follow the requirements set forth in Wis. Stat. § 971.08 by failing to warn him that a conviction would subject him to deportation. Yet each circuit court is held to know that its failure to give the warnings would result in the conviction being vacated.

¶ 110. The majority relies on a technicality to allow the convictions to stand. The technicality is that the defendant made his challenge to the convictions by collateral attack rather than on direct appellate review. The majority concedes that Lagundoye would prevail, and his convictions would be vacated, if his challenge were being heard on direct appellate review. Yet had Lagundoye challenged his convictions by direct appellate review, the challenges might have been viewed as frivolous because the court of appeals had already ruled on the challenge he might have made and does not have the power to overturn its own decisions.[53]

---

[53] *Cook v. Cook,* 208 Wis. 2d 166, 186–90, 560 N.W.2d 246 (1997).

¶ 111. The majority opinion's decision is wrong on the law and shocks the conscience, at least my conscience. I dissent.

¶ 112. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.